LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
MARGARET M. HALL (Bar No. 293699)
mhall@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Tel. (805) 963-1622 / Fax. (805) 962-3152
*Attorneys for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Surfrider Foundation*

JULIE TEEL SIMMONDS (Bar No. 208282)
jteelsimmonds@biologicaldiversity.org
ELIZABETH JONES (Bar No. 326118)
ljones@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Tel. (510) 844-7100 / Fax. (510) 844-7150
*Attorneys for Center for Biological Diversity and Wishtoyo Foundation*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| EXXON MOBIL CORPORATION,<br><br>Petitioner/Plaintiff,<br><br>v.<br><br>SANTA BARBARA COUNTY BOARD OF SUPERVISORS,<br><br>Respondent/Defendant,<br><br>and<br><br>ENVIRONMENTAL DEFENSE CENTER, GET OIL OUT!, SANTA BARBARA COUNTY ACTION NETWORK, SIERRA CLUB, SURFRIDER FOUNDATION, CENTER FOR BIOLOGICAL DIVERSITY, and WISHTOYO FOUNDATION,<br><br>Proposed Defendant/Intervenors. | Case No. 2:22-cv-03225-DMG (MRWx)<br><br>**PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hon. Dolly Gee<br><br>Hearing: October 21, 2022<br>Time: 9:30 a.m.<br>Place: Courtroom 8C,<br>350 West 1st Street, Los Angeles |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 21, 2022,[1] or as soon thereafter as counsel may be heard, before the Honorable Dolly M. Gee in the above-titled Court—Courtroom 8C of the First Street Federal Courthouse, 350 West 1st Street, Los Angeles, CA 90012—Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, Surfrider Foundation, Center for Biological Diversity, and Wishtoyo Foundation ("Proposed Intervenors") will, and hereby do, move for leave to intervene as respondents and defendants in this case as a matter of right pursuant to Federal Rule of Civil Procedure 24(a). Alternatively, Proposed Intervenors move for permission to intervene pursuant to Federal Rule of Civil Procedure 24(b).

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 28, 2022, and August 15, 2022. Petitioner/Plaintiff takes no position on this Motion, and Respondent/Defendant plans to oppose this Motion.

This Motion is based on this Notice of Motion and Motion; Memorandum of Points and Authorities; declarations of Linda Krop, Margaret Hall, Lynn Carlisle, Brenton Kelly, Michael Lyons, Kenneth Hough, Katie Davis, Chad Nelsen, Kenneth Palley, Brendan Cummings, and Mati Waiya; exhibits corresponding to those declarations; Proposed Answer; the argument of counsel; all pleadings and papers on file in this action; and upon such other matters as may be presented to the Court at the hearing on this Motion or before the Court's decision.

WHEREFORE, Proposed Intervenors pray that the Court grant the instant motion and thereby grant them leave to intervene as defendants and respondents in this action. In addition, if intervention is granted, Proposed Intervenors further request that the Court accept their Proposed Answer.

---

[1] This is the soonest available hearing date on which all counsel in this matter are available. Hall Decl. ¶¶ 5, 7.

i

1  Respectfully submitted this 1st day of September, 2022.

2

3                                          */s/ Margaret M. Hall*

4                                          MARGARET M. HALL (Bar No. 293699)
                                           mhall@environmentaldefensecenter.org
5                                          LINDA KROP (Bar No. 118773)
                                           lkrop@environmentaldefensecenter.org
6                                          ENVIRONMENTAL DEFENSE CENTER
                                           906 Garden Street
7                                          Santa Barbara, CA 93101
                                           Tel. (805) 963-1622 / Fax. (805) 962-3152
8                                          *Attorneys for Environmental Defense*
                                           *Center, Get Oil Out!, Santa Barbara County*
9                                          *Action Network, Sierra Club, and Surfrider*
                                           *Foundation*
10

11

12                                         */s/ Julie Teel Simmonds*

13                                         JULIE TEEL SIMMONDS (Bar No. 208282)
                                           jteelsimmonds@biologicaldiversity.org
14                                         ELIZABETH JONES (Bar No. 326118)
                                           ljones@biologicaldiversity.org
15                                         CENTER FOR BIOLOGICAL DIVERSITY
                                           1212 Broadway, Suite 800
16                                         Oakland, CA 94612
                                           Tel. (510) 844-7100 / Fax. (510) 844-7150
17                                         *Attorneys for Center for Biological Diversity*
                                           *and Wishtoyo Foundation*
18

19

20  I, Julie Teel Simmonds, in accordance with Local Rule 5-4.3.4(a)(2)(i), attest that

21  Margaret M. Hall reviewed the pleading presented above, concurred in the content,
    and authorized the filing of this document bearing her signature with the Court.

22

23                                         */s/ Julie Teel Simmonds*

24                                         JULIE TEEL SIMMONDS
                                           *Attorney for Center for Biological Diversity*
25                                         *and Wishtoyo Foundation*

26

27

28

# <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION ................................................................... i

TABLE OF CONTENTS ................................................................................... iii

TABLE OF AUTHORITIES ...............................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES ........................................1

    INTRODUCTION .........................................................................................1

    FACTUAL BACKGROUND.........................................................................1

    PROPOSED INTERVENORS ......................................................................6

    LEGAL BACKGROUND............................................................................11

    ARGUMENT...............................................................................................12

        I.    The Court Should Grant Intervention as of Right. ...................12

            A.    The Motion is Timely. ......................................................12

            B.    Proposed Intervenors Have Significantly
                   Protectable Interests..........................................................13

                  1.    Proposed Intervenors Have Significantly
                         Protectable Interests Based on Their
                         Participation in the Administrative Process.........14

                  2.    Proposed Intervenors Have Significantly
                         Protectable Interests Based on Their Use
                         and Enjoyment of the Affected Environment. ......16

            C.    Disposition of This Case May Impair or Impede
                   Proposed Intervenors' Interests. .....................................17

            D.    Existing Parties Do Not Adequately Represent
                   Proposed Intervenors' Interests .......................................18

1.    Existing Parties May Not Be Capable of Making All of Proposed Intervenors' Arguments or Willing to Do So ...........................19

2.    Proposed Intervenors Will Add Necessary Elements to the Case. ...........................................22

II.    In the Alternative, Proposed Intervenors Satisfy the Standard for Permissive Intervention .......................................23

A.    Proposed Intervenors' Motion is Timely.......................23

B.    Proposed Intervenors Satisfy the Requirement of a Common Question of Law or Fact. .......................24

C.    Proposed Intervenors Will Not Unduly Delay or Prejudice Parties. ..........................................................24

D.    Equitable Considerations Weigh in Favor of Granting Intervention. .....................................................25

CONCLUSION..............................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) ..................................................................... 18, 22

*Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.,*
    309 F.3d 1113 (9th Cir. 2002) ................................................................. 12

*Cal. Dump Truck Owners Ass'n v. Nichols,*
    275 F.R.D. 303 (E.D. Cal. 2011) .............................................................. 13

*Cal. Sea Urchin Comm'n v. Jacobson,* No. 13-05517 DMG (CWx),
    2013 WL 12114517 (C.D. Cal. Oct. 2, 2013) ............................................. *passim*

*California ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006) ................................................................. 14, 17

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,*
    152 F.3d 1184 (9th Cir. 1998) ................................................................. 21

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011) .................................................................. *passim*

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998) .................................................................. 14

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.,*
    36 F.4th 850 (9th Cir. 2022) .................................................................... 6

*Forest Conservation Council v. U.S. Forest Serv.,*
    66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by*
    *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)......... 19, 21

*Freedom from Religion Found., Inc. v. Geithner,*
    644 F.3d 836 (9th Cir. 2011) ................................................................... 23

*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ................................................................. 13, 14

v

*Kootenai Tribe of Idaho v. Veneman*,
   313 F.3d 1094, 1110–11 (9th Cir. 2002), *abrogated on other grounds by*
   *Wilderness Soc'y*, 630 F.3d 1173 (9th Cir. 2011) .................................................24

*Nat'l Assoc. of Home Builders v. San Joaquin Valley Unified Air Pollution Dist.*,
   No. 1:07cv0820 LJO DLB, 2007 WL 2757995 (E.D. Cal. Sept. 21, 2007) ........21

*Nooksack Indian Tribe v. Zinke*,
   321 F.R.D. 377 (W.D. Wash. 2017) .......................................................................24

*Nw. Forest Res. Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996) ...................................................................................14

*Orange County. v. Air Cal.*,
   799 F.2d 535 (9th Cir. 1986) .................................................................................12

*Perry v. Proposition 8 Off. Proponents*,
   587 F.3d 947 (9th Cir. 2009) .................................................................................22

*Prete v. Bradbury*,
   438 F.3d 949 (9th Cir. 2006) .................................................................................19

*Sagebrush Rebellion, Inc. v. Watt*,
   713 F.2d 525 (9th Cir. 1983) ........................................................................... 15, 18

*SEC v. U.S. Realty & Impvt. Co.*,
   310 U.S. 434 (1940) ...............................................................................................12

*Sierra Club v. U.S. Env't Prot. Agency*,
   995 F.2d 1478 (9th Cir. 1993) ......................................................................... 11, 14

*Spangler v. Pasadena City Bd. of Ed.*,
   552 F.2d 1326 (9th Cir. 1977) ...............................................................................25

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ...................................................... 11, 17, 19, 21, 22

*Syngenta Seeds, Inc. v. County of Kauai*, No. CIV. 14-00014BMK,
   2014 WL 1631830 (D. Haw. Apr. 23, 2014) .........................................................20

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) ...............................................................................................19

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ................................................................12

*United States v. Carpenter*,
  526 F.3d 1237 (9th Cir. 2008) ..............................................................16

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ................................................................11

*Va. House of Delegates v. Bethune-Hill*,
  139 S. Ct. 1945 (2019) ..........................................................................12

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ................................................. 11, 13, 14

*Yniguez v. Arizona*,
  939 F.2d 727 (9th Cir. 1991) ................................................................11

**Rules**

Fed. R. Civ. P. 24 ....................................................................................1

Fed. R. Civ. P. 24(a) ................................................................................ i

Fed. R. Civ. P. 24(a)(2) ............................................................. 11, 12, 23

Fed. R. Civ. P. 24(b) ........................................................................ i, 12

Fed. R. Civ. P. 24(b)(1) ........................................................................23

Fed. R. Civ. P. 24(b)(1)(B) ...................................................................12

Fed. R. Civ. P. 24(b)(3) ................................................................. 12, 23

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 24, Environmental Defense Center ("EDC"), Get Oil Out! ("GOO!"), Santa Barbara County Action Network ("SBCAN"), Sierra Club, Surfrider Foundation, Center for Biological Diversity ("CBD"), and Wishtoyo Foundation (collectively "Proposed Intervenors") request that this Court grant them leave to intervene as of right, or in the alternative, permission to intervene, as Respondents/Defendants in this action. In this case, Petitioner/Plaintiff Exxon Mobil Corporation ("ExxonMobil") challenges the Santa Barbara County Board of Supervisors' ("County") March 8, 2022 denial of its permit application for the Interim Trucking for Santa Ynez Unit Phased Restart Project ("the Project"). Proposed Intervenors worked for decades to protect the California coastline, local communities, and marine environment from the risks of oil development, including dangerous methods of transporting crude oil. Specifically, they worked for years, devoting substantial resources, to oppose the project during the environmental and administrative review processes leading up to the County's denial of ExxonMobil's Project. The Project presents an unacceptable risk of harm to communities and the environment, including from the risk of tanker truck accidents. Proposed Intervenors seek to protect their significant interests in ensuring the County's denial of the Project is upheld.

## FACTUAL BACKGROUND

Since the Plains All American Pipeline rupture on May 19, 2015, which devastated Santa Barbara County's coastline and marine environment, three oil platforms that ExxonMobil operated off the Gaviota coast have been shut down. The pipeline had served as ExxonMobil's only form of transportation for its crude oil. To restart its platforms and onshore processing facility in Las Flores Canyon near Goleta, ExxonMobil repeatedly applied for approval to transport its oil via tanker trucks to receiving stations in Kern and northern Santa Barbara counties.

ExxonMobil first applied for an emergency permit to truck oil from its onshore oil processing facility on June 4, 2015. *See* Krop Decl. ¶ 8. ExxonMobil proposed to transport its oil by truck rather than pipeline—though only the latter is authorized in its existing Development Plan. EDC, CBD, and others immediately submitted letters opposing ExxonMobil's request, citing threats to the environment as well as to public health and safety. *Id.*; *see also* Cummings Decl. ¶ 21. The groups also pointed out that ExxonMobil's application did not comply with County regulations. The County denied the application on June 9, 2015, on the grounds that (1) there was no evidence that a defined emergency existed; (2) ExxonMobil should pursue the "customary procedures for permit processing;" (3) the application was inconsistent with the County's Comprehensive Plan; and (4) trucking of oil was not within the parameters of the Governor's Executive Order regarding the Plains pipeline spill. Krop Decl. ¶ 8.

On September 22, 2017, ExxonMobil applied for a development permit to restart production from the offshore platforms and truck the oil for up to seven years. Krop Decl. ¶ 9. The County cannot approve such a request without a revision to ExxonMobil's Development Plan. The proposed Project would involve the construction of new truck loading facilities at the Las Flores Canyon onshore processing facility and allow throughput of more than 11,000 barrels of oil per day. *Id.* Up to seventy tanker truck roundtrips would be allowed per day. *Id.*. Each truck would carry approximately 6,720 gallons of processed crude oil. *Id.* The trucks would travel along Highway 101 on the Gaviota Coast and Route 166 to pump stations in Santa Maria and Pentland. *Id.* From there the oil would be transported to refineries. Approximately 470,400 gallons of oil would be trucked each day for seven years or until a pipeline becomes available. *Id.*

The County prepared a Supplemental Environmental Impact Report ("EIR") to assess potential impacts because the Project presented a substantial change in ExxonMobil's previously permitted activities and required substantial revisions to

environmental documents the County certified in the 1980s. Krop Decl. ¶ 10. The County released the Draft EIR on April 12, 2019. The Draft EIR identified Class I impacts (impacts that could not be mitigated to less than significant levels) pertaining to oil spills and fires that would negatively affect biological, water, and cultural resources at the processing facility site as well as along the trucking routes. Proposed Intervenors submitted extensive comments identifying impacts that were omitted or inadequately analyzed in the Draft EIR, including impacts related to public safety; biological and cultural resources; offshore operations and spills; and climate change. *Id.;* Cummings Decl. ¶ 22. The Final EIR was released on July 30, 2020 and reiterated the significant and unmitigable impacts related to oil spills and fires from the proposed trucking operations. Krop Decl. ¶ 10.

On August 12, 2020, the County planning department issued its staff report for the Planning Commission hearing. Krop Decl. ¶ 11. The staff report recommended approval of the Project, but only if the Project were modified to disallow trucking during rainy periods and to limit trucking to the Santa Maria pump station only. The report noted that prohibiting trucks on Route 166 would substantially reduce air emissions and the risk of accidents and oil spills. *Id.*

On August 13, 2020, Phillips 66 announced its intention to shut down the Santa Maria pump station as part of its plans to terminate its Santa Maria refining facility in 2023. *See* Krop Decl. ¶ 11. As such, ExxonMobil would only be able to truck oil to the Santa Maria pump station through 2022. Based on this new information, the Planning Commission hearing was cancelled.

The County issued a Proposed Revised Final Supplemental EIR to address, in part, the planned shutdown of the Santa Maria Pump Station. A new Commission hearing was scheduled for September 29, 2021, and a new staff report was issued that recommended approval of trucking to both Santa Maria (so long as that route is available) and Pentland. Krop Decl. ¶ 12. Proposed Intervenors again submitted extensive written comments and presented testimony at the hearing. In

3

particular, Proposed Intervenors submitted evidence of accident and spill risks along the proposed trucking routes that revealed that such risks were much greater than disclosed in the EIR. For example, EDC showed that there were at least eight oil tanker truck accidents along the proposed route in the previous fourteen years, with six accidents occurring within the last six years. These accidents resulted in multiple deaths, injuries, oil spills, explosions, fires, and road closures. One of the most recent accidents, in March 2020, spilled approximately 6,000 gallons of oil into the Cuyama River, just upstream from Twitchell Reservoir. Krop Decl. ¶ 12.

After several hours of public testimony, the Planning Commission voted to recommend denial of the Project. Krop Decl. ¶ 12. The Commission found that there were insufficient benefits to override the significant unmitigable impacts, as required under the California Environmental Quality Act ("CEQA"). In addition, the Commission found that the Project was inconsistent with the County Land Use Development Code ("LUDC") and Coastal Zoning Ordinance ("CZO") requirements that (1) streets and highways must be adequate to carry the type and quantity of traffic proposed by the Project; and (2) the Project must not be detrimental to the comfort, convenience, general welfare, health, or safety of the neighborhood and must not be incompatible with the surrounding area. The hearing was continued to November 3, 2021, at which time the Commission approved the recommended findings of denial.

This recommendation was presented to the Board of Supervisors at its March 8, 2022 meeting. Krop Decl. ¶ 13. Proposed Intervenors submitted comments prior to the meeting urging the County to deny ExxonMobil's proposal because it would cause significant and unavoidable impacts; the application was inconsistent with County policies and ordinances pertaining to oil transportation and community welfare; and the EIR was inadequate. *See, e.g.* Krop Decl. Exs. 1, 2; Cummings Decl. Ex. 1. The groups also testified at the hearing and showed a video depicting the accident history and risks along the proposed trucking routes.

4

At the conclusion of the hearing, the Board voted to deny the Project. The Board reiterated the findings of the Planning Commission and added several references to evidence Proposed Intervenors and the public submitted, which showed the potential benefits of the Project did not outweigh the significant impacts and the Project was inconsistent with the LUDC and CZO:

> While there may be an increase in local jobs and local expenditures if the Project is approved, the Board has concluded that these benefits may not be as secure or as high quality as indicated by the applicant and they do not outweigh the unavoidable adverse environmental impacts of the Project. The Board finds that potential benefits of the Project do not outweigh the Project's significant local and regional environmental impacts because the Project will be detrimental to the environment generally, and the County of Santa Barbara along the truck route will bear the brunt of environmental impacts, including potential significant impacts from spills and localized air impacts.

Krop Decl. Ex. 3, at 98 (Board of Supervisors Action Letter (March 16, 2022), Findings for Denial at A-1)) ("Findings").

The Board cited public comments EDC and others submitted that identified additional accident data and safety concerns. *See, e.g.*, *id.* at 100 (Findings at A-3) ("Additionally, the September 27, 2021 Environmental Defense Center comment letter to the Planning Commission, incorporated herein by reference, cites four recent tanker truck accidents on Route 166 that either resulted in injuries or fatalities and/or in the release of the truck's crude oil contents (September 13, 2016, May 20, 2018, December 12, 2018 and March 21, 2020).") The Board noted that the closure of the Santa Maria pump station would increase truck trip distance, risks, and potential environmental impacts. *Id.* at 99, 100 (Findings at A-2, A-3).

On May 11, 2022, ExxonMobil filed a complaint in this Court alleging the County had committed a prejudicial abuse of discretion and misapplied CEQA. *See* ECF No. 1. It further alleged the County violated the Takings and Commerce Clauses of the United States Constitution and California Constitution, and illegally exercised its police powers. *Id.*

## PROPOSED INTERVENORS

Proposed Intervenor EDC is a California public benefit, non-profit corporation, headquartered in Santa Barbara, California. Founded in response to the 1969 Santa Barbara oil spill, EDC's program areas include climate, energy, and protecting open space, wildlife, clean water, and the Santa Barbara Channel. Krop Decl. ¶¶ 4–6. Its mission is to protect and enhance the local environment through education, advocacy, and legal action, and it works primarily within Santa Barbara, Ventura, and San Luis Obispo counties. *Id.* at ¶ 4. EDC has more than 2,000 members and advocates on behalf of itself and other non-profit, environmental organizations. Since its founding forty-five years ago, EDC has worked to protect the local coastline, marine environment, watersheds, and terrestrial environment of Santa Barbara County from the risks and impacts of oil production, including transportation. *Id.* at ¶¶ 7–8, 14. EDC has successfully retired forty offshore oil leases, urged the denial of a crude by rail project, and halted the unconventional oil drilling practices of fracking and acidizing off Southern California's coast. Krop Decl. ¶ 7; s*ee also Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850 (9th Cir. 2022).

GOO! is a Santa Barbara based public interest group dedicated to the protection of the Santa Barbara Channel and coastline from the deleterious environmental, economic, and esthetic impacts of oil development. Lyons Decl. ¶ 4. GOO!'s core membership is comprised of approximately 1,500 politically, socially, and economically diverse individuals from the Santa Barbara area and surrounding counties.  GOO!'s primary activities include enhancing public awareness about oil-related issues and impacts through education and opposing the proliferation of oil development, or minimizing its impacts, by participating in the administrative and legislative process. GOO! was formed in the wake of the Santa Barbara Oil Spill of 1969, and throughout its existence, it has fought to protect California from further oil development and exploitation. *Id.* at ¶ 4.

SBCAN is a countywide non-profit membership-based organization founded in 2001, dedicated to promoting social and economic justice; preserving environmental and agricultural resources; and creating sustainable communities. Hough Decl. ¶ 4. SBCAN advocates a holistic approach to community planning that integrates housing, open space, and transportation to meet the needs of all members of our community and future generations. SBCAN works in cooperation with a broad range of progressive activists and organizations to ensure that all members of the community share a voice in our future.

Sierra Club is a non-profit environmental organization that supported denial of the Project. Sierra Club is a national organization of nearly 833,000 members, including more than 169,000 members in California. Davis Decl. ¶ 3. Sierra Club is a grassroots, volunteer-led organization that works with local communities to advocate in various ways to protect the environment and public health. Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the earth; practicing and promoting the responsible use of the earth's ecosystems and resources; educating and enlisting humanity to protect and restore the quality of the natural and human environment; and using all lawful means to carry out these objectives. *Id*. Consistent with its mission, Sierra Club is committed to stopping the many environmental and human health impacts associated with fossil fuels. *Id*. at ¶¶ 5–7. The Santa Barbara-Ventura Chapter of the Sierra Club, established in 1952, serves California's Santa Barbara and Ventura counties. The Santa Barbara-Ventura Chapter's four groups—Arguello, Santa Barbara, Ventura and Conejo—encompass a wide and unique diversity of natural resources.

Surfrider Foundation is an environmental non-profit organization dedicated to the protection and enjoyment of the world's ocean, waves, and beaches for all people. Nelson Decl. ¶ 4. Surfrider advocates for beach access for all people as well as the preservation of the coast and ocean for future generations. Surfrider has over 350,000 supporters and members, 79 local chapters, and 144 school clubs in

the United States and maintains 19 chapters and clubs in California, including the Santa Barbara Chapter, as well as the Isla Vista School Club. *Id.* Surfrider's members enjoy recreating on the California coast, including surfing, swimming, beach walking, observing wildlife and habitat, and other coastal recreation. Nelson Decl. ¶ 6; Palley Decl. ¶ 6. Additionally, Surfrider members carry out conservation activities, such as beach cleanups, regularly in Santa Barbara County. Nelson Decl. ¶¶ 3, 6. Surfrider's members derive recreational, aesthetic, and economic benefits from the ocean off the coast of California and the natural resources it supports. The recreational activities of Surfrider members rely upon clean water, accessible beaches, and a healthy coastal environment. Surfrider's members' future use and enjoyment of the Pacific Ocean off California and its coastal habitats depends upon healthy and sustainable coastal resources, including clean water.

The Center for Biological Diversity ("CBD") is a nonprofit, public interest environmental organization dedicated to the protection of threatened and endangered species and their habitats through science, policy, and environmental law. CBD's Oceans and Endangered Species programs focus specifically on conserving ecosystems and ensuring that imperiled species are properly protected from destructive practices. Cummings Decl. ¶ 4. CBD's Climate Law Institute works to reduce greenhouse gas emissions and other air pollutants, conserve natural resources, and minimize the public health risks facing communities exposed to industrial pollution. *Id.* Specific objectives include addressing the adverse impacts of oil and gas infrastructure to climate, water, air, wildlife, public health, and environmental justice. CBD has approximately 90,000 members, including almost 18,000 members who reside in California, almost 900 of whom live in Santa Barbara, Kern, and San Luis Obispo counties. *Id.* at ¶ 5. CBD's members and staff include individuals who live, work, and recreate in areas threatened by the adverse impacts of ExxonMobil's trucking proposal. *Id.* at ¶¶ 17–20. Members and staff include those who regularly use and intend to continue to

8

use areas that would be affected by oil spills and air pollution along the proposed trucking route. *Id.* CBD actively participated in this Project's permit review process, submitting multiple comment letters and participating in hearings on this matter. *Id.* at ¶¶ 21–23.

Wishtoyo Foundation ("Wishtoyo") is a Native-led California nonprofit public-interest organization with over 700 members primarily composed of Chumash Native Americans and residents of Santa Barbara, Ventura, and Los Angeles counties. Waiya Decl. ¶ 3. Wishtoyo's mission is to preserve, protect, and restore Chumash culture, the culture of indigenous peoples, and the environment all peoples depend upon. *Id.* at ¶ 2. The organization uses education, outreach, cultural programs, scientific study, restoration projects, advocacy, and legal action to attain this mission. *Id.* at ¶¶ 4, 6, 10. Chumash tribes, bands, and clans have a long history of interaction with the marine waters of the Pacific Ocean and the Santa Barbara Channel from Morro Bay to Malibu and out to and around the Channel Islands. Chumash peoples rely upon these lands and waters and their natural cultural resources to support and maintain Chumash traditional practices, ways of life, and ancestral connections. Wishtoyo's staff and members use these lands and waters for ceremonial purposes; to connect with and celebrate their ancestors and cultural heritage; to gather natural cultural resources; for educational purposes, recreational use, wildlife viewing, scientific study, and environmental monitoring; and intend to continue this use as permitted. *Id.* at ¶¶ 7, 12–15.

Since time immemorial, marine, and terrestrial species have played an important role in the culture and lifeways of Chumash maritime tribes, bands, and clans. Wishtoyo's Chumash members continue to have a strong cultural and spiritual interest in the protection of species. Wishtoyo's Chumash members navigate on tomols (Chumash plank canoes) and by other means through the Santa Barbara Channel, where encountering marine species is essential to their connection with their ancestors and provides them with a spiritual echo through

1    time and connection to the planet as they traverse between the Channel Islands (the

2    origin of the Chumash Peoples) and the mainland. The existence and abundance of

3    species and habitat are also critical to the maintenance of Wishtoyo's Chumash

4    members' cultural practices, lifeways, and ceremony. Restarting offshore oil

5    production, transporting oil across coastal landscapes, and risking oil spill impacts

6    to cultural, biological, and water resources threatens Wishtoyo's Chumash

7    members' ability to continue their traditional, educational, recreational, and

8    environmental practices, ways of life, and ancestral connections. *Id.* at ¶¶ 7–9, 11.

9         All the Proposed Intervenors have members who live, work, and recreate

10   near ExxonMobil's proposed trucking route. *See, e.g.* Carlisle Decl. ¶¶ 5–6;

11   Cummings Decl. ¶¶ 17–20; Davis Decl. ¶¶ 4, 8–10; Hough Decl. ¶¶ 5, 9, 13; Kelly

12   Decl. ¶¶ 2, 3, 5, 10; Krop Decl. ¶¶ 14–15; Lyons Decl. ¶¶ 2, 5–6; Nelson Decl. ¶ 6;

13   Palley Decl. ¶ 6; Waiya Decl. ¶ 12. The Project's environmental impacts and safety

14   risks directly affect them, and they have an interest in ensuring the safety of their

15   communities. *See, e.g.* Carlisle Decl. ¶¶ 5–6, 8; Cummings Decl. ¶ 6, 16-20; Davis

16   Decl. ¶¶ 5, 8–12, 22; Hough Decl. ¶¶ 5, 9; Kelly Decl. ¶¶ 5, 8, 10; Krop Decl. ¶¶

17   15-18; Lyons Decl. ¶¶ 7–8; Nelson Decl. ¶ 7; Palley Decl. ¶¶ 6–7; Waiya Decl.

18   ¶ 13.

19        Proposed Intervenors have firmly opposed the Project since it was proposed

20   and dedicated substantial resources to ensuring its denial. *See, e.g.* Carlisle Decl.

21   ¶ 7; Cummings Decl. ¶ 20–22; Davis Decl. ¶¶ 13–21; Hough Decl. ¶¶ 10–12; Kelly

22   Decl. ¶ 9; Krop Decl. ¶¶ 8–13; Lyons Decl. ¶ 9; Nelson Decl. ¶ 8; Palley Decl.

23   ¶¶ 8–9; Waiya Decl. ¶ 14. They met with members of the Planning Commission

24   and Board of Supervisors to express their concerns over the impacts of the Project.

25   *See, e.g.,* Carlisle Decl. ¶ 7; Davis Decl. ¶ 20; Krop Decl. ¶¶ 12–13. They attended

26   and testified at Planning Commission and Board of Supervisors hearings and

27   submitted written comments urging denial of the Project. *See, e.g.,* Carlisle Decl.

28   ¶ 7; Cummings Decl. ¶ 22; Davis Decl. ¶ 17, 19; Hough Decl. ¶¶ 10–12; Kelly

Decl. ¶ 9; Krop Decl. ¶¶ 12–13; Lyons Decl. ¶ 9. Proposed Intervenor EDC submitted evidence into the record about the history of trucking accidents illustrating the dangers of the Project, and the County directly relied upon that evidence in its denial. Krop Decl. ¶ 13; Exs. 1, 2. Proposed Intervenor CBD submitted evidence into the record about 258 large-truck incidents along the proposed trucking route between January 2015 and May 2021 alone that required a police response and resulted in 110 injuries and ten deaths. Cummings Decl. ¶ 22; *id.* Ex. 1, at 14.

## LEGAL BACKGROUND

When deciding whether to grant motions for intervention as of right under Federal Rule of Civil Procedure 24(a)(2), the Ninth Circuit applies a four-part test:

> (1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. U.S. Env't Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993). Applicants who meet this test must be allowed to intervene. *Yniguez v. Arizona*, 939 F.2d 727, 731 (9th Cir. 1991). Rule 24(a)(2) is generally interpreted "broadly in favor of proposed intervenors," by following "practical and equitable considerations." *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)). This is because a "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* (quoting *City of Los Angeles*, 288 F.3d at 397–98). A proposed intervenor's "well-pleaded, nonconclusory" allegations in their motion to intervene and supporting documents must be taken "as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). Where a proposed intervenor seeks to participate purely

11

defensively, it need not separately establish Article III standing. *See Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951–52 (2019).

Additionally, under Rule 24(b), the court may permit anyone to intervene in a lawsuit, upon "timely motion," who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. U.S. Realty & Impvt. Co.*, 310 U.S. 434, 459 (1940). A court has "broad discretion" to grant permissive intervention. *Orange County. v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

Proposed Intervenors satisfy the requirements for intervention as of right under Rule 24(a)(2). In the alternative, they meet the requirements of Rule 24(b) and request that the Court exercise its discretion to allow them to intervene.

## I.   THE COURT SHOULD GRANT INTERVENTION AS OF RIGHT.

Proposed Intervenors satisfy the Ninth Circuit's four-part test for intervention as of right. Their motion is timely, they have significant protectable interests in the action, disposition of this case may impair those interests, and they have demonstrated that the County may not adequately represent them.

### A. The Motion is Timely.

Courts weigh the following three factors in assessing timeliness of a motion to intervene: (1) the stage of the proceedings; (2) prejudice to existing parties; and (3) the reason for and length of delay in moving to intervene. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (quoting *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)).

Proposed Intervenors' motion is timely because it is being filed at a very early stage of the litigation. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding motion timely and "filed at a very early stage" when filed four months after complaint, two months after answer, and "before any hearings or rulings on substantive matters"); *see also Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 306 (E.D. Cal. 2011) (finding motion timely when no substantive proceedings had occurred). The filing date is less than four months after ExxonMobil initiated this action on May 11, 2022, ECF No. 1, and roughly two months after the County filed its Answer, on June 24, 2022, ECF No. 12. There have been no hearings or rulings on substantive matters, and no discovery has occurred. On July 28, 2022, the existing parties filed a Rule 26(f) Joint Report proposing bifurcation and a briefing schedule for cross motions for summary judgment. ECF No. 16. If Proposed Intervenors are granted intervention, they would request to join that proposed briefing schedule if adopted, which is not proposed to begin until early 2023, and coordinate with the County to minimize duplication. There is no potential prejudice to other parties and no delay in moving to intervene. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (when a motion is made at an early stage "the parties would not have suffered prejudice from the grant of intervention at that early stage, and intervention would not cause disruption or delay in the proceedings."). Proposed Intervenors' motion is therefore timely.

**B. Proposed Intervenors Have Significantly Protectable Interests.**

Proposed Intervenors have "significantly protectable" interests relating to the subject of the action. *Wilderness Soc'y*, 630 F.3d at 1177. The interest test "does not require a specific legal or equitable interest" nor that the interest be protected by the specific statutes under which the litigation is brought. *Id.* at 1179 (citations omitted). Instead, the relevant inquiry is whether "the interest is protectable under some law" and whether "there is a relationship between the

legally protected interest and the claims at issue." *Id.* (quoting *Sierra Club*, 995 F.2d at 1484). The interest test is met if an applicant will "suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006); *see also Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998) (stating that the relationship of the interests to the claims is satisfied "if the resolution of the plaintiff's claims actually will affect the applicant" (citations omitted)). The Ninth Circuit has noted that this test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc'y*, 630 F.3d at 1179 (citation omitted). Proposed Intervenors have significant protectable interests based both on their rigorous participation in the administrative process leading to this litigation and their use and enjoyment of the affected environment.

      1. <u>Proposed Intervenors Have Significantly Protectable Interests Based on Their Participation in the Administrative Process.</u>

An organization that was actively involved in the decision-making process leading to the litigation at issue has a significantly protectable interest sufficient for intervention as of right. *Idaho Farm Bureau Fed'n*, 58 F.3d at 1397 (granting intervention of right where groups participated in the administrative process leading to listing of an endangered species in litigation challenging the listing decision (citation omitted)); *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837–38 (9th Cir. 1996) (recognizing that the Ninth Circuit has repeatedly granted intervention of right where "groups were directly involved in the enactment of the law or in the administrative proceedings out of which the litigation arose" (citations omitted)); *Cal. Sea Urchin Comm'n v. Jacobson,* No. 13-05517 DMG (CWx), 2013 WL 12114517, at *3 (C.D. Cal. Oct. 2, 2013) ("[T]he Ninth Circuit has found that a 'significantly protectable' interest generally exists when the public interest organization was active in the administrative process leading to the

litigation." (citation omitted)). In such circumstances, "there can be no serious dispute" concerning "the existence of a protectable interest on the part of the applicant." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527–28 (9th Cir. 1983) (granting intervention of right where organization participated in the administrative process leading to designation of a conservation area, in litigation challenging creation of that area).

Proposed Intervenors vigorously participated in the administrative process culminating in the County's decision challenged in this case. They were extensively involved in advocacy urging denial of ExxonMobil's Project both before the Planning Commission and Board of Supervisors. These efforts included convening a coalition of concerned groups and individuals to coordinate input, meeting with members of the Commission and Board to express concerns, testifying at public hearings, and submitting detailed written comments. *See, e.g.*, Carlisle Decl. ¶ 7; Cummings Decl. ¶¶ 21–23; Davis Decl. ¶¶ 17, 19–20; Krop Decl. ¶¶ 12–13; Lyons Decl. ¶ 9. For example, Proposed Intervenor CBD dedicated significant staff time to assessing the risks posed by the Project, including the organization's GIS spatial analyst who collected, analyzed, and presented large truck incident data for the January 2015 to May 2021 time period. Cummings Decl. ¶ 21–23. Proposed Intervenor EDC hired several legal interns over the multi-year process to conduct and update research on the scope of oil trucking accidents that have occurred both in the state and along the route. This information, which was not presented in the County's EIR or staff reports, was explicitly included in County's decision challenged in this case as evidence demonstrating the Project's safety risks. Krop Decl. Ex. 3, at 100 (Findings at A-3). Proposed Intervenors have been actively engaged at every step of the process, investing significant staff time and financial resources to ensure the Project was denied.  Their direct involvement in the administrative process provides a clear basis for demonstrating protectable interests sufficient to support intervention of right.

2. <u>Proposed Intervenors Have Significantly Protectable Interests Based on Their Use and Enjoyment of the Affected Environment.</u>

Proposed Intervenors' environmental, public health, and safety concerns likewise constitute significantly protectable interests. Specific interests in enjoyment of nature and wildlife are significantly protectable for purposes of intervention. *See Citizens for Balanced Use*, 647 F.3d at 897 (recognizing interest in "conserving and enjoying" an area); *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008) (recognizing interest in the "use and enjoyment" of an area).

Proposed Intervenors have a long history of advocacy on behalf of conservation and environmental protection in Santa Barbara County, San Luis Obispo County, and Kern County, with specific demonstrated interests in protecting the water quality and air quality of the region, and protecting local communities from harm caused by environmental disasters. *See, e.g.* Cummings Decl. ¶ 9–15; Davis Decl. ¶¶ 5–6; Hough Decl. ¶ 4; Krop Decl. ¶ 7; Lyons Decl. ¶ 4; Nelson Decl. ¶ 5; Palley Decl. ¶ 5; Waiya Decl. ¶¶ 6, 10. In particular, Proposed Intervenors have worked for decades to prevent oil development activities that pose risks of oil spills and accidents. Their members recreate along the Project's route and enjoy observing wildlife and their habitats in these areas. *See, e.g.,* Davis Decl. ¶ 8 ("I live just 15 miles from the ExxonMobil Las Flores Canyon and POPCO Facilities, and have regularly enjoyed day use at Refugio beach and have camped at Refugio state park where the trucks would be getting on and off the freeway, turning around and going over bridges and near the ocean."); Hough Decl. ¶ 5 ("Sometimes I take Route 166 enroute to San Joaquin Valley or just to go along the Cuyama River for nature photography. I always see crude oil tankers there and I would see many more if this project was approved. I know how real the danger is and get well off the road for photography."); Lyons Decl. ¶ 5 ("My uses in this area consist of surfing, bike riding, running, hiking, fishing, swimming, bird watching, camping, star gazing, photography, mobile working,

driving and picnicking, to name a few"). Due to their unique activities in the area, they have an interest in "conserving and enjoying" the stretch of coastline along Highway 101 and the sensitive watersheds and resources the route would have passed along Route 166. *Citizens for Balanced Use*, 647 F.3d at 897. They also travel along Highway 101 and Route 166 and will be impacted by the increased risk of serious accidents. *See, e.g.,* Carlisle Decl. ¶¶ 5–6; Cummings Decl. ¶¶ 18–20; Davis Decl. ¶¶ 8–9; Hough Decl. ¶¶ 5, 9, 13; Lyons Decl. ¶¶ 6–7; Palley Decl. ¶ 6. Their enjoyment of this region would be severely reduced if the Project were allowed to proceed. *See, e.g.,* Carlisle Decl. ¶ 6; Cummings Decl. ¶¶ 18–19; Davis Decl. ¶¶ 10–12; Krop Decl. ¶ 9; Lyons Decl. ¶ 7; Nelsen Decl. ¶¶ 6–7.

In sum, Proposed Intervenors have demonstrated protectable interests sufficient to support their intervention of right in this case.

### C. Disposition of This Case May Impair or Impede Proposed Intervenors' Interests.

As this Court has recognized, "[o]nce a court determines that an intervenor has a 'significantly protectable' interest in an action, the third prong is easily satisfied." *Cal. Sea Urchin Comm'n*, 2013 WL 12114517, at *3 (citation omitted); *see also California ex rel. Lockyer*, 450 F.3d at 442. Under this prong, courts address whether denial of intervention would impede a prospective intervenor's ability to protect its interests in the subject of an action. *Berg*, 268 F.3d at 822 ("We follow the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" (quoting Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment)).

An adverse ruling in this case would impair or impede Proposed Intervenors' abilities to protect their interests. If ExxonMobil prevails and it is allowed to proceed with its proposed trucking Project, Proposed Intervenors' interests in enjoying the surrounding environment and conserving cultural

resources, wildlife, and their habitats would be impaired. *See Cal. Sea Urchin Comm'n*, 2013 WL 12114517, at *3 (holding that a proposed intervenor's interests in protecting sea otters would be impaired by an adverse decision that would authorize an action harming sea otters) (citing *Sagebrush Rebellion*, 713 F.2d at 528 (holding that an adverse ruling would impair conservations group's interests in "preservation of birds and their habitat") (additional citation omitted)). The Project would impair Proposed Intervenors' interests through its direct environmental and public safety impacts. *See, e.g.,* Carlisle Decl. ¶¶ 5–6, 8; Davis Decl. ¶¶ 7, 10–12; Lyons Decl. ¶¶ 7, 10; Palley Decl. ¶¶ 6–7. For example, the County found the risk of an oil spill to be *unavoidable* and that the Project would affect water, biological, and cultural resources. Krop Decl. Ex. 3, at 98 (Findings at A-1). A single accident could lead to an oil spill that would have devastating effects on the local environment and thus severely impair Proposed Intervenors' interests. *See, e.g.* Carlisle Decl. ¶ 5; Davis Decl. ¶¶ 21–22; Lyons Decl. ¶ 10; Palley Decl. ¶ 7. In addition, allowing the Project to proceed would "undo years of advocacy" that Proposed Intervenors' undertook to ensure the Project was denied. *Cal. Sea Urchin Comm'n*, 2013 WL 12114517, at *3.

### D. Existing Parties Do Not Adequately Represent Proposed Intervenors' Interests.

Courts address adequacy of representation according to three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted). "The burden of showing inadequacy of representation is 'minimal' and is satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086);

*see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972) (citation omitted).

While a rebuttable presumption of adequacy arises where parties have the same ultimate objective, or when the government acts on behalf of its constituency, that presumption can be rebutted by a compelling showing otherwise. *Citizens for Balanced Use*, 647 F.3d at 898. Even in such circumstances, "[t]he burden of showing inadequacy of representation is generally minimal . . . ." *Prete v. Bradbury*, 438 F.3d 949, 959 (9th Cir. 2006). The "most important factor," ultimately, is "how the interest compares with the interests of existing parties." *Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted). Here, Proposed Intervenors' interests naturally diverge from those of the County, and they add necessary elements to the case.

      1.  <u>Existing Parties May Not Be Capable of Making All of Proposed Intervenors' Arguments or Willing to Do So.</u>

For the purpose of demonstrating inadequate representation, it is not necessary for Proposed Intervenors to anticipate specific differences in potential argument or strategy; rather, it is enough to show that "because of the difference in interests, it is likely that [current parties] will not advance the same arguments as [proposed intervenors]." *Berg*, 268 F.3d at 824. Here, the parties' interests naturally differ in fundamental ways such that it is likely Proposed Intervenors and the County will make different arguments.

First, Proposed Intervenors' members would be directly impacted by the Project in profoundly unique and personal ways, which stands in contrast to the County's more general interest in public safety. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173 ("Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." (citations omitted)). For example, Proposed Intervenors live along

the route, rely on it for regular transportation, and enjoy the surroundings for hiking, nature photography, other recreation and rely upon it for sacred cultural resources. *See, e.g.,* Davis Decl. ¶¶ 4–5, 8–9; Hough Decl. ¶¶ 5, 9; Lyons Decl. ¶¶ 5–6; Palley Decl. ¶ 6; Waiya Decl. ¶¶ 12–13. In *Syngenta Seeds, Inc. v. County of Kauai*, the court recognized that proposed intervenors had personal health and safety interests that rebutted the presumption of adequate representation by a County. No. CIV. 14-00014BMK, 2014 WL 1631830, at *7 (D. Haw. Apr. 23, 2014). In that case, the groups sought to help defend an ordinance they alleged afforded them important health safeguards from agricultural operations that their members lived and worked near. The court granted intervention, reasoning "[t]heir interests in upholding the law are decidedly more palpable than the County's generalized interest." *Id.* So too here; Proposed Intervenors' members' individual concerns about their safety and that of the environment they use and enjoy is much more direct and personal and will give rise to a unique position in the litigation.

Second, the County is situated so that it must consider a variety of factors, whereas Proposed Intervenors are focused exclusively on the Project's adverse impacts. Proposed Intervenors are all organizations with specific, focused missions dedicated to environmental protection and preservation and enjoyment of the natural environment. *See* Cummings Decl. ¶ 3; Davis Decl. ¶ 3; Hough Decl. ¶ 4; Krop Decl. ¶ 4; Lyons Decl. ¶ 4; Nelson Decl. ¶ 4; Waiya Decl. ¶¶ 2–4. Proposed Intervenors also include members who live or travel along the truck routes and would be directly impacted by any accidents, spills, fires, and road closures. *See, e.g.* Carlisle Decl. ¶¶ 5–6, 8; Davis Decl. ¶¶ 4–5, 8–9; Hough Decl. ¶ 5; Kelly Decl. ¶¶ 2–3, 10; Lyons Decl. ¶¶ 5–7; Palley Decl. ¶¶ 6–7. The County, in contrast, operates under a multitude of obligations and necessarily represents a wide variety of County-wide interests in its decision-making. For example, the County must balance the benefits of a project against its impacts, including economic considerations. When County staff originally recommended approval of the

Project, they provided a statement of overriding considerations (as required by CEQA) based on staff's view that the Project's creation of jobs, providing locally produced oil, property taxes, mitigation funds, and local business expenditures outweighed its impacts. Krop Decl. Ex. 3, at 98 (Findings at A-1). The County's broad constituency includes individuals supportive of the Project, not solely those concerned about adverse impacts. Indeed, even some members of the Board of Supervisors voted to approve the project. Therefore, the County's interests are distinct from Proposed Intervenors' specific environmental, cultural, and public safety interests.

The Ninth Circuit has found such differences to be enough to overcome the presumption of adequate representation where the government "is required to represent a broader view than the more narrow, parochial interests" of the proposed intervenor. *Forest Conservation Council*, 66 F.3d at 1499; *see also Berg*, 268 F.3d at 823 (granting intervention where a City's "range of considerations in development" was "broader than the profit-motives animating" proposed intervenors); *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (ruling that where interests of proposed intervenor's "members were potentially more narrow and parochial than the interests of the public at large" they demonstrated inadequate representation by existing state agency party).

Although Proposed Intervenors and the County share an interest in protecting environmental and cultural resources, the County has much broader interests so it may not advance all of Proposed Intervenors' arguments. *See Nat'l Assoc. of Home Builders v. San Joaquin Valley Unified Air Pollution Dist.*, No. 1:07cv0820 LJO DLB, 2007 WL 2757995, at *5 (E.D. Cal. Sept. 21, 2007) (granting intervention to environmental organizations seeking to intervene as defendants alongside government entity in industry challenge to air quality regulation, recognizing that the parties "share a general interest in public health"

but "the [government entity] has a much broader interest in balancing the need for regulations with economic considerations," making it doubtful it would advance the same arguments as proposed intervenors).

Moreover, the circumstances here are comparable to those in *California Sea Urchin Commission*. In that case, this Court recognized that because the proposed intervenors had compelled the agency to reach a decision that was the subject of litigation, they did not have "sufficiently congruent interests" with the agency, such that the agency did not adequately represent them. *Cal. Sea Urchin Comm'n*, 2013 WL 12114517, at *5 (quoting *Berg*, 268 F.3d at 823). Here, Proposed Intervenors likewise urged the County to deny the Project. *See, e.g.,* Cummings Decl. ¶¶ 21–22, Ex. 1; Krop Decl. ¶¶ 12–13, Exs. 1, 2. It was far from a foregone conclusion that the County would have taken that position, which was over staff's recommendation of approval, without the active participation and detailed submissions of Proposed Intervenors. For instance, when specifying its reasons for denial, the County revised its findings to specifically incorporate by reference the evidence that Proposed Intervenors submitted, demonstrating their role in informing the decision. Krop Decl. Ex. 3, at 100 (Findings at A-3). Such differences are substantive and do not amount to mere disputes in litigation strategy. *Cf. Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 952 (9th Cir. 2009). Therefore, Proposed Intervenors have demonstrated that the County will not "undoubtedly make all of a proposed intervenor's arguments," or that it is "capable and willing to make such arguments." *Arakaki*, 324 F.3d at 1086 (citation omitted).

2. Proposed Intervenors Will Add Necessary Elements to the Case.

The final factor likewise weighs in favor of intervention because Proposed Intervenors will contribute "necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086 (citation omitted). Proposed Intervenors are seven organizations representing environmental, conservation, and cultural interests that would not otherwise have a voice in this lawsuit. *See* Cummings

22

Decl. ¶ 3; Davis Decl. ¶ 3; Hough Decl. ¶ 4; Krop Decl. ¶ 4; Lyons Decl. ¶ 4; Nelson Decl. ¶ 4; Waiya Decl. ¶¶ 2–4. Collectively, they represent thousands of individual members concerned about the devastating impacts of the Project. These include community members who live, work, and recreate in the Project's vicinity. *See, e.g.,* Carlisle Decl. ¶¶ 2, 4, 5–6; ¶ Cummings Decl. ¶¶ 17–20; Davis Decl. ¶ 4–5, 8–9; Hough Decl. ¶ 5; Kelly Decl. ¶¶ 2–3, 10; Lyons Decl. ¶¶ 2, 5; Palley Decl. ¶¶ 6–7; Waiya Decl. ¶¶ 12–13. If intervention were denied, the Court would hear only the oil industry and a municipality's perspective. The current party composition is off balance, and Proposed Intervenors have made a compelling showing that existing parties may not adequately represent their interests.

In sum, all the requirements under Rule 24(a)(2) are met, and Proposed Intervenors have a right to intervene.

## II.   IN THE ALTERNATIVE, PROPOSED INTERVENORS SATISFY THE STANDARD FOR PERMISSIVE INTERVENTION.

Courts may approve permissive intervention where (1) an applicant files a timely motion and (2) the applicant's claim or defense shares a common question of law or fact with the main action; and if such requirements are met, the court considers whether (3) intervention will not unduly delay or prejudice the adjudication of rights of the existing parties. Fed. R. Civ. P. 24(b)(1), (b)(3).[2] Proposed Intervenors meet all of these requirements, and there are additional equitable considerations that weigh in favor of intervention here.

### A. Proposed Intervenors' Motion is Timely.

As explained above, the motion to intervene is timely.

---

[2] In addition, permissive intervention also ordinarily requires independent grounds for jurisdiction; however, "[w]here the proposed intervenor . . . brings no new claims, the jurisdictional concern drops away." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843–44 (9th Cir. 2011) (citation omitted). Here, Proposed Intervenors need not establish an independent ground for jurisdiction because they seek to intervene as defendants with no new cross-claims, as demonstrated by the Proposed Answer filed with this motion.

**B. Proposed Intervenors Satisfy the Requirement of a Common Question of Law or Fact.**

The common questions of law and fact prong of permissive intervention is to be "liberally construed." *Nooksack Indian Tribe v. Zinke*, 321 F.R.D. 377, 383 (W.D. Wash. 2017) (citation omitted). Proposed Intervenors' defenses raise exclusively common questions of law and fact with the main action, and readily satisfy this requirement. Proposed Intervenors would seek to defend the County's denial of the Project with respect to all the causes of action raised in ExxonMobil's complaint. Accordingly, their defenses share common questions of law and fact with the main action. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110–11 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (upholding grant of permissive intervention where proposed intervenors' defenses were "directly responsive" to the claims in plaintiffs' complaint); *Cal. Sea Urchin Comm'n*, 2013 WL 12114517, at *6 ("[Proposed intervenors] share a common question of law and fact with the current action because they seek to defend [the government's] statutory authority in terminating [an action], which is the precise issue raised by Plaintiffs' claims."). In addition, all the parties will reference the same administrative record; there will be common factual questions raised in Proposed Intervenors' defenses and the main action.

**C. Proposed Intervenors Will Not Unduly Delay or Prejudice Parties.**

If granted intervention, Proposed Intervenors would adhere to the existing schedule as set forth in the Joint Report filed on July 28, 2022. ECF No. 16. In addition, they would agree to reasonable conditions or limitations on intervention, such as filing combined briefs for the Intervenors and coordinating with the County to minimize duplication. *See Cal. Sea Urchin Comm'n,* 2013 WL 12114517, at *6 (granting permissive intervention and adopting limitations such as combined briefing and urging the parties to coordinate to avoid duplication). Accordingly, their participation raises no concerns under this factor.

24

**D. Equitable Considerations Weigh in Favor of Granting Intervention.**

In addition, important equitable considerations support Proposed Intervenors' participation in this lawsuit. In considering permissive intervention, courts may exercise discretion to assess issues such as "the nature and extent of the intervenors' interest" and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). As explained above, the trucking Project threatens Proposed Intervenors' members with direct, potentially catastrophic impacts to their safety and surrounding local environment. They worked for years, coordinating together, to fight the approval of the Project to protect themselves, their families, their communities, and sensitive local resources. Now that the Project denial is being challenged in court, they deserve to have a say in the matter. The outcome of this case will have direct impacts in their lives and communities for years to come.

Additionally, as noted above, Proposed Intervenors were intimately involved in developing the factual record of this case and offer expertise and perspectives that are distinct from that of the oil industry and County. They are therefore in a strong position to contribute to the Court's understanding of the issues in this case.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors' motion to intervene as defendants and respondents in this action should be granted as a matter of right. In the alternative, Proposed Intervenors respectfully request the Court to allow permissive intervention.

//

//

//

//

Respectfully submitted this 1st day of September, 2022.

*/s/ Margaret M. Hall*

MARGARET M. HALL (Bar No. 293699)
mhall@environmentaldefensecenter.org
LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Tel. (805) 963-1622 / Fax. (805) 962-3152
*Attorneys for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Surfrider Foundation*

*/s/ Julie Teel Simmonds*

JULIE TEEL SIMMONDS (Bar No. 208282)
jteelsimmonds@biologicaldiversity.org
ELIZABETH JONES (Bar No. 326118)
ljones@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Tel. (510) 844-7100 / Fax. (510) 844-7150
*Attorneys for Center for Biological Diversity and Wishtoyo Foundation*

I, Julie Teel Simmonds, in accordance with Local Rule 5-4.3.4(a)(2)(i), attest that Margaret M. Hall reviewed the pleading presented above, concurred in the content, and authorized the filing of this document bearing her signature with the Court.

*/s/ Julie Teel Simmonds*

JULIE TEEL SIMMONDS
*Attorney for Center for Biological Diversity and Wishtoyo Foundation*