DAWN SESTITO (S.B. #214011)
dsestito@omm.com
JUSTINE M. DANIELS (S.B. #241180)
jdaniels@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California  90071-2899
Telephone:  +1 213 430 6000
Facsimile:   +1 213 430 6407

JAMES M. AUSLANDER (*pro hac vice*)
jauslander@bdlaw.com
BEVERIDGE & DIAMOND PC
1900 N Street NW, Suite 100
Washington, DC 20036
Telephone:  +1 202 789 6000
Facsimile:   +1 202 789 6190

Attorneys for Petitioner and Plaintiff
Exxon Mobil Corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXXON MOBIL CORPORATION,<br><br>　　　　　Petitioner and<br>　　　　　Plaintiff,<br><br>　　v.<br><br>SANTA BARBARA COUNTY<br>BOARD OF SUPERVISORS,<br><br>　　　　　Respondent and<br>　　　　　Defendant.<br><br>　　and<br><br>ENVIRONMENTAL DEFENSE<br>CENTER, GET OIL OUT!,<br>SANTA BARBARA COUNTY<br>ACTION NETWORK, SIERRA<br>CLUB, SURFRIDER FOUNDATION,<br>CENTER FOR BIOLOGICAL<br>DIVERSITY, and WISHTOYO<br>FOUNDATION,<br>　　　　　Proposed Defendant<br>　　　　　and Intervenors. | Case No. 2:22-cv-03225-DMG (MRWx)<br><br>**PETITIONER/PLAINTIFF EXXON MOBIL CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO INTERVENE**<br><br>**Judge**: Hon. Dolly M. Gee<br>**Hearing**: October 21, 2022<br>**Time**: 9:30 a.m.<br>**Courtroom**: 8C |

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................... 3

        A.      Proposed Intervenors' Protectible Interests are Limited to the
                Adjudication of the Petition for Writ of Administrative Mandate
                in Phase I. .................................................................................... 9

        B.      Proposed Intervenors Fail to Demonstrate Inadequate
                Representation Necessary for Intervention as of Right. ................. 11

                1.      Proposed Intervenors and the Board Share the Same
                        Ultimate Objective, Giving Rise to a Presumption of
                        Adequate Representation. .................................................... 11

                2.      Proposed Intervenors Fail to Make a Very Compelling
                        Showing Rebutting the Presumption that the Board Will
                        Adequately Represent Their Interests. .................................. 12

        C.      The Court Should Exercise its Discretion to Disallow
                Permissive Intervention. ............................................................... 17

        D.      In the Alternative, Proposed Intervenors' Interests Can Be
                Adequately Represented Through a Joint Amici Brief. ................... 19

        E.      If the Court Grants Intervention, It Should Require All Proposed
                Intervenors to Submit Joint, Consolidated Briefs that Do not
                Raise or Address Issues Covered by the Board. .............................. 20

III.    CONCLUSION ........................................................................................ 21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arakaki v. Cayetano,*
324 F.3d 1078 (9th Cir. 2003)............................................................. passim

*California ex rel. Lockyer v. U.S.,*
450 F.3d 436 (9th Cir. 2006) ......................................................................15

*California Sea Urchin Comm'n v. Jacobson,*
2013 WL 12114517 (C.D. Cal. Oct. 2, 2013)............................. 14, 15, 16, 21

*California v. Tahoe Reg'l Plan. Agency,*
792 F.2d 775 (9th Cir. 1986) ......................................................................19

*Callahan v. Brookdale Senior Living Cmtys, Inc.,*
42 F.4th 1013 (9th Cir. 2022) ................................................................. 9, 17

*Crane-McNab v. Cty. of Merced,*
2010 WL 4024936 (E.D. Cal. Oct. 13, 2010) ...............................................10

*Ctr. for Biological Diversity v. Brennan,*
571 F. Supp. 2d 1105 (N.D. Cal. 2007) ......................................................20

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey,*
95 F.3d 1422 (9th Cir. 1996) ......................................................................10

*Drakes Bay Oyster Co. v. Salazar,*
2013 WL 451813 (N.D. Cal. Feb. 4, 2013)................................. 14, 15, 16, 19

*Forest Conservation Council v. U.S. Forest Service,.*
66 F.3d 1489 (9th Cir.1995) ......................................................................15

*Freedom from Religion Found., Inc., v. Geithner,*
644 F.3d 836 (9th Cir. 2011) ........................................................................8

*Harmony W. Ashley, LLC v. City of Charleston, S.C.,*
2021 WL 805535 (D.S.C. Mar. 3, 2021) ......................................................10

*League of United Latin Am. Citizens v. Wilson,*
131 F.3d 1297 (9th Cir. 1997)....................................................................12

*Los Angeles SMSA Ltd. P'ship v. City of Los Angeles,*
2019 WL 4570012 (C.D. Cal. July 31, 2019)..........................................17, 19

*North Dakota v. Heydinger,*
288 F.R.D. 423 (D. Minn. 2012) .................................................................11

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland,*
960 F.3d 603 (9th Cir. 2020) .............................................. 12, 14, 15, 16

*Orange County v. Air California,*
799 F.2d 535 (9th Cir. 1986) ................................................................. 9, 17

*Pavlock v. Holcomb,*
337 F.R.D. 173 (N.D. Ind. 2020)...........................................................10, 11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Perry v. Proposition 8 Official Proponents,*
  587 F.3d 947 (9th Cir. 2009) ................................................................. passim

*Spangler v. Pasadena City Bd. of Educ.,*
  552 F.2d 1326 (9th Cir. 1977) .......................................................... 9, 17

*Stringfellow v. Concerned Neighbors in Action,*
  480 U.S. 370 (1987) ................................................................................20

*Syngenta Seeds, Inc. v. County of Kauai,*
  2014 WL 1631830 (D. Haw. Apr. 23, 2014) ....................................15

*U.S. v. City of Los Angeles,*
  288 F.3d 391 (9th Cir. 2002) ...............................................................9

*Van Hoomissen v. Xerox Corp.,*
  497 F.2d 180 (9th Cir. 1974) *decision supplemented*, 503 F.2d 1131 (9th Cir.
  1974) .......................................................................................................20

*Wilderness Soc'y v. U.S. Forest Serv.,*
  630 F.3d 1173 (9th Cir. 2011) ...........................................................15

*Wolfsen Land & Cattle Co. v. U.S.,*
  98 Fed. Cl. 507 (2011) .........................................................................10

**Statutes**

CZO 35-174.7.1(c) ....................................................................................6

CZO 35-174.7.1(e) ....................................................................................6

LUDC 35.82.080.E.1(c) ...........................................................................6

LUDC 35.82.080.E.1(e) ...........................................................................6

**Rules**

Fed. R. Civ. P. 24(a) ...............................................................................20

I.     **INTRODUCTION**

Petitioner and Plaintiff Exxon Mobil Corporation ("ExxonMobil") opposes the motion to intervene filed by Environmental Defense Center ("EDC"), Get Oil Out! ("GOO"), Santa Barbara County Action Network ("SBCAN"), Sierra Club, Surfrider Foundation, Center for Biological Diversity ("CBD") and Wishtoyo Foundation (collectively, "Proposed Intervenors"). Defendant Santa Barbara County Board of Supervisors (the "Board") will adequately represent Proposed Intervenors' concerns during this litigation, and any evidence or argument they may offer is already part of the Board's administrative record.

ExxonMobil filed suit against the Board challenging its decision to deny ExxonMobil's application for a permit to temporarily use trucks to transport crude oil across Santa Barbara County (the "Project") while the pipelines ExxonMobil previously used for transportation are repaired. ExxonMobil alleges that, among other things, the Board abused its discretion in denying the Project by failing to consider the substantial evidence before it and instead adjudicating a different question not within the Board's authority: whether oil should be produced offshore and then transported within the County.

Proposed Intervenors expressed their interests and concerns directly to the County's agencies—including the Planning and Development staff ("P&D Staff"), the Planning Commission, and the Board—during the Project's four-year environmental and administrative review. During that review, County agencies evaluated evidence submitted by concerned local and environmental groups, including the Proposed Intervenors, and held multiple public hearings where members of such groups spoke and presented further evidence about the Project. As Proposed Intervenors tout in their motion, their concerns were not only received but heard. Indeed, the Board specifically incorporated public comments and data provided by Proposed Intervenors in its Findings for Denial of the Project (the "Findings").

Proposed Intervenors have not and cannot overcome the intervention standard under Rule 24(a) or (b) for demonstrating that the Board will not adequately represent their interests. *See, e.g., Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (finding that a "very compelling showing to the contrary" is required to rebut the presumption of adequate representation that arises when the government is a party to an action "acting on behalf of a constituency that it represents"); *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (affirming denial of permissive intervention "for reasons similar to those underpinning [the trial court's] decision on intervention as of right"). Proposed Intervenors not only share the Board's ultimate objective of upholding the decision to deny the Project but also fail to offer any argument or evidence rebutting the presumption that the Board—a government entity charged with protecting the health, safety, and enjoyment of its citizens—will adequately represent their interests. The Board relied extensively on Proposed Intervenors' comments and evidence when it denied the Project. The Board is actively defending its decision, will have access to the administrative record that includes all comments and evidence presented to it by Proposed Intervenors, and is likely to raise the arguments and concerns Proposed Intervenors articulated in their motion. Accordingly, the Court should deny Proposed Intervenors' Motion. Should the Court find that Proposed Intervenors' participation in this action is warranted, the Court should still deny this motion and instead allow Proposed Intervenors to file a joint amici curiae brief. ExxonMobil and the Board agree, and the Court has ordered, that the first phase of this case will likely be resolved at summary judgment based primarily on the administrative record. An amici brief would allow Proposed Intervenors to be heard without risking disruption to the case and its schedule. Alternatively, if the Court does permit intervention, ExxonMobil requests that the Court set limits on Proposed Intervenors' participation, requiring that they file joint briefing that does not raise the same issues addressed by the

1    Board.

2    II.    **FACTUAL BACKGROUND**

3          On May 19, 2015, one of two third party owned and operated pipelines

4    transporting crude oil from ExxonMobil's Santa Ynez Unit ("SYU") ruptured,

5    discharging oil along Santa Barbara's coastline.  Shortly thereafter, both pipelines

6    were shut down and remain inoperable.  It is undisputed that, without these

7    pipelines, ExxonMobil has no way to transport oil from SYU.[1]  ExxonMobil has

8    suspended operations at SYU, including at its offshore platforms and continues to

9    spend approximately $100 million dollars each year to maintain SYU while not

10   receiving any revenues or economically beneficial use from its property.[2]

11         In an effort to restart its operations, ExxonMobil submitted an application for

12   an interim trucking permit to the County on September 22, 2017.[3]  The Project, if

13   approved, would have authorized ExxonMobil to amend the SYU Final

14   Development Plan to temporarily truck SYU's crude oil through the county to

15   neighboring pump stations for up to seven years.[4]  For more than four years,

16   ExxonMobil worked closely with the P&D Staff and various County agencies,

17   revising its proposal several times to ensure that all potential adverse impacts were

18   mitigated to the fullest extent possible and that the Project met all applicable safety

19   and environmental standards.[5]  The Project was subject to a number of public

20   hearings, during which individuals and interested organizations—including the

21   Proposed Intervenors—voiced their opinions and concerns about the Project.[6]  The

22   County prepared three supplemental environmental impact reports ("SEIRs")—a

23   _____

24   [1] *See* Compl. ¶ 7.

     [2] *See id.* ¶¶ 7, 25.

25   [3] *See id.* ¶ 8.

26   [4] *See id.*

27   [5] *See id.* ¶ 9.

28   [6] *See id.*

draft SEIR released in April 2019, a final SEIR released in July 2020, and a revised final SEIR dated August 2021—in accordance with the requirements of the California Environmental Quality Act ("CEQA"). Each of those reports addressed the Proposed Intervenors' concerns and other issues.[7]

Proposed Intervenors, various non-profit public interest organizations, took every available opportunity to involve themselves in the environmental review process and influence the County's decision on whether to approve the Project. They submitted written comments; presented research and evidence about alleged risks associated with trucking oil; met with members of the Board and Planning Commission to discuss concerns about the Project; organized grassroot efforts to raise community opposition; and testified at meetings and hearings about the Project's alleged impacts.[8]

For example, representatives from six of the seven Proposed Intervenors (all but the Surfrider Foundation) attended a public meeting in May 2019 related to the draft SEIR to articulate their concerns about the Project.[9] Beyond publicly appearing at the meeting, these organizations submitted extensive comments about the adequacy of the draft report and submitted information about how the Project could allegedly affect public safety and biological and cultural resources within and

---

[7] *See id.*; *see also* Krop Decl. ¶¶ 10, 12 (Dkt. 18-7).

[8] *See* Mot. at 10-11; For EDC's involvement, *see* Krop Decl. ¶¶ 10, 12-13 and Exhibits 1-2; Carlise Decl. ¶ 7 (Dkt. 18-1). For CBD's involvement, *see* Cummings Decl. ¶¶ 21-22 and Exhibit 1 (Dkt. 18-2). For Sierra Club's involvement, *see* Davis Decl. ¶¶ 15, 17-20 (Dkt. 18-3). For SBCAN's involvement, *see* Hough Decl. ¶ 11 (Dkt. 18-5). For GOO's involvement, *see* Lyons Decl. ¶ 9 (Dkt. 18-8). For Surfrider Foundation's involvement, *see* Nelson Decl. ¶ 8 (Dkt. 18-9); Palley Decl. ¶ 9 (Dkt. 18-10). For Wishtoyo Foundation's involvement, *see* Waiya Decl. ¶ 14 (Dkt. 18-11).

[9] *See* Draft SEIR Public Meeting Comments and Responses, Speaker Sign-Up at 6-8 through 6-16, *available at*: https://cosantabarbara.app.box.com/s/4mzuwnrrvcrdp7vr6v41pkgwz13449uv/file/697482674332.

around the County.[10]  EDC submitted a 62-page letter with eight attachments, critiquing various purported deficiencies with the report.[11]  GOO, CBD, Sierra Club, Wishtoyo Foundation, and Surfrider Foundation submitted similar letters.[12]  The P&D Staff thoroughly reviewed these submissions, considered the groups' oral comments, and responded to each concern in writing.[13]

In September 2021, the P&D Staff—which was tasked with conducting the administrative and environmental review process—issued a report with three key findings: (1) that the Project mitigated the only unavoidable impact—risk of oil spills—to the maximum extent feasible, reducing the risk to at most one spill in 17 years; (2) that the significant risks—air quality, increases in greenhouse gases, and traffic—were mitigated to the point of insignificance; and (3) that alternatives to the Project were not feasible.[14]  The report further found that, consistent with CEQA, the risk of oil spills was acceptable when weighed against the Project's significant economic, environmental, technological, and social benefits.[15]  Finally, the report

---

[10] *See* Krop Decl. ¶ 10; *see also* Cummings Decl. ¶ 22.

[11] *See* June 4, 2019 Letter from EDC to Kathryn Lehr, Santa Barbara County Planning & Development at 3-195, *available at*: https://cosantabarbara.app.box.com/s/4mzuwnrrvcrdp7vr6v41pkgwz13449uv/file/697482988721.  The letter was submitted on behalf of EDC, GOO, and SBCAN. Sierra Club and Surfrider Foundation also signed on to the letter.  *See* Krop Decl. ¶ 10.

[12] *See* June 3, 2019 Letter from GOO to Kathryn Lehr, Santa Barbara County Planning & Development at 3-710; June 4, 2019 Letter from Environmental Groups to Kathryn Lehr, Santa Barbara County Planning & Development at 3-682; June 4, 2019 Letter from CBD, Sierra Club, Wishtoyo Foundation and others to Kathryn Lehr, Santa Barbara County Planning & Development at 3-727, *available at* https://cosantabarbara.app.box.com/s/4mzuwnrrvcrdp7vr6v41pkgwz13449uv/file/697482988721.

[13] *See* Organization Comments and Responses from Volume II of Revised Final SEIR, *available at id.* (responses follow directly after each letter).

[14] *See* Compl. ¶¶ 36-37.

[15] *See id.* ¶ 38.

found that the Project complied with local land-use regulations including Land Use and Development Code 35.82.080.E.1(c) and (e) and Coastal Zoning Ordinance ("CZO") 35-174.7.1(c) and (e).[16]  Those regulations require that "streets and highways will be adequate and properly designed to carry the type and quantity of traffic generated by the proposed use" and that "the project will not be detrimental to the health, safety, comfort, convenience, and general welfare of the neighborhood and will not be incompatible with the surrounding area."[17]  After P&D Staff issued this report, the Project was scheduled for a hearing before the Planning Commission.

In advance of that hearing, EDC submitted a letter on behalf of 35 organizations, reasserting their prior critiques and urging that the Planning Commission recommend denying ExxonMobil's trucking proposal.[18]  Proposed Intervenors also met with members of the Planning Commission to voice their concerns and participated in the hearing, offering testimony and other evidence about the risk of accidents and spills along the proposed trucking route.[19]  Although both the SEIRs and staff report found that these risk had been mitigated to the maximum extent feasible or to the point of insignificance, the Planning Commission voted on September 29, 2021, to continue the hearing on the Project and ordered the P&D Staff to draft findings recommending denial of the Project.[20] The Planning Commission then voted 3-2 on November 3, 2021, to recommend denial of the project.[21]

On March 8, 2022, the Planning Commission presented its recommendation

---

[16] *See id.* ¶¶ 32, 39.

[17] LUDC 35.82.080.E.1(c),(e); CZO 35-174.7.1(c), (e).

[18] *See* Krop Decl. ¶ 12.

[19] *See, e.g., id.*; Cummings Decl. ¶ 22; Davis Decl. ¶ 19.

[20] *See* Compl. ¶¶ 40-41.

[21] *See id.* ¶ 45.

to the Board.[22] Consistent with their prior efforts, Proposed Intervenors again submitted written comments in advance of the hearing, with EDC leading the effort and drafting a letter on behalf of 49 environmental organizations petitioning for denial of the Project.[23] At the hearing, representatives for the Proposed Intervenors offered testimony and presented evidence to the Board about the alleged risks and impact trucking would have on the environment and community.[24] Based largely on this evidence and its own animus toward the oil and gas industry, the Board voted 3-2 to deny the Project.[25]

The Findings for Denial attached to the Board's Action Letter incorporate by reference information that Proposed Intervenors provided to the Planning Commission and the Board.[26] Specifically, the Findings referenced Proposed Intervenors' evidence allegedly demonstrating that the purported impacts of the Project outweighed its benefits.[27] The Findings also cited comments from EDC and others about trucking accident data along the proposed trucking route.[28]

ExxonMobil and the Board have agreed that this action should proceed in two phases, with the petition for writ of administrative mandate ("Phase I") proceeding first and being subject to cross motions for summary judgment based primarily on the administrative record. This approach will likely make a trial on the mandamus petition unnecessary. The parties have further agreed that all other

---

[22] *See id.* ¶ 46.

[23] *See* Krop Decl. ¶ 13 (Dkt. 18-7).

[24] *See, e.g.,* Krop Decl. ¶¶ 13, 19-20, Exhibits 1-2 (EDC); Cummings Decl. ¶ 22 (CBD); Davis Decl. ¶ 19 (Sierra Club).

[25] *See* Compl. ¶¶ 46-61, 69-70.

[26] *See* Mot. at 5; Krop Decl., Ex. 3 at A-1-A-3.

[27] *Id.*

[28] *Id.*

claims ("Phase II") should be stayed pending the resolution of the first phase.[29]  No
alternative dispute resolution proceedings are contemplated for Phase I of the
litigation.[30]  On September 21, 2022, this Court entered a scheduling order
consistent with the foregoing agreements.[31]

## I.      **THE COURT SHOULD DENY THE MOTION TO INTERVENE.**

Federal Rule of Civil Procedure 24 allows third parties to intervene in an
action by moving for intervention as of right or for permissive intervention.  Courts
rely on both practical and equitable considerations to assess these motions.
*Arakaki*, 324 F.3d at 1083.  Here, Proposed Intervenors do not qualify to intervene
as of right, and the factors for permissive intervention likewise weigh against them.

For an applicant to intervene as of right, the Ninth Circuit requires that "(1)
[t]he [applicant's] motion must be timely; (2) the applicant must have a
'significantly protectable' interest relating to the property or transaction which is
the subject of the action; (3) the applicant must be so situated that the disposition of
the action may as a practical matter impair or impede its ability to protect that
interest; and (4) the applicant's interest must be inadequately represented by the
parties to the action." *Freedom from Religion Found., Inc., v. Geithner*, 644 F.3d
836, 841 (9th Cir. 2011).  The applicant bears the burden of proving all four
elements, and "[f]ailure to satisfy any one of the requirements is fatal to the
application." *Perry*, 587 F.3d at 950.  Here, Proposed Intervenors have failed to
demonstrate that their interests are not adequately represented by the Board, so they
do not qualify for intervention as of right.

Alternatively, courts may grant permissive intervention if there exists "(1) an
independent ground for jurisdiction; (2) a timely motion; and (3) a common

---

[29] *See* Joint Report of Parties Pursuant to FRCP 26(f) and L.R. 26-1 at 5-6 (Dkt. 16).

[30] *See id.* at 6-8.

[31] *See* Minute Order (Dkt. 21).

question of law and fact between the movant's claim or defense and the main action." *Callahan v. Brookdale Senior Living Cmtys, Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). Even if an applicant meets these threshold requirements, courts have broad discretion to deny permissive intervention. *See Orange County v. Air California*, 799 F.2d 535, 538 (9th Cir. 1986). Courts can consider additional factors such as "the nature and extent of the intervenors' interest," "whether the intervenors' interests are adequately represented by other parties," and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Here, these factors warrant the Court exercising its discretion to deny permissive intervention.

### A. Proposed Intervenors' Protectible Interests are Limited to the Adjudication of the Petition for Writ of Administrative Mandate in Phase I.

An intervenor has a "significant protectable interest" in an action if (1) the intervenor "asserts an interest that is protected under some law," and (2) "there is a 'relationship' between its legally protected interest and the plaintiff's claims." *U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002). "An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant." *Arakaki*, 324 F.3d at 1084. ExxonMobil alleged six causes of action against the Board.[32] The Court has agreed to bifurcate the matter between two phases, with Phase I focused solely adjudicating the petition for writ of administrative mandate.[33] The remaining five claims are stayed for Phase II, pending resolution of the petition.

Proposed Intervenors maintain that they have protectible interests "based both on their rigorous participation in the administrative process leading to this

---

[32] Compl. at ¶¶ 78-137 (petition for writ of administrative mandate, violation of takings and commerce clauses of the United States Constitution and California Constitution, illegal exercise of police powers).

[33] *See* Minute Order (Dkt. 21).

litigation and their use and enjoyment of the affected environment."[34]  These interests relate to defending against the petition for writ of mandate.  And, as discussed in more detail below, the Board adequately represents these interests. Proposed Intervenors have neither demonstrated nor even addressed whether they hold an equivalent interest in *any* of the claims to be decided in Phase II.

In particular, ExxonMobil's sixth cause of action for inverse condemnation seeks damages for the lost value of its property resulting from the denial of the Project.  ExxonMobil may only recover such damages if the Project denial is affirmed.  *See Crane-McNab v. Cty. of Merced*, 2010 WL 4024936, at *8 (E.D. Cal. Oct. 13, 2010) ("[E]ach plaintiff must establish harm to the property that plaintiff owns to recover under the Takings Clause"); *see also Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1432 (9th Cir. 1996) (finding liability for a taking when "all economically viable use of [a] property" is denied). Proposed Intervenors have not and cannot articulate any protectable interest in denying ExxonMobil just compensation.  *See, e.g., Pavlock v. Holcomb*, 337 F.R.D. 173, 179 (N.D. Ind. 2020) (finding intervenor had no significant protectible interest to intervene in a Fifth Amendment takings claim as such claim "only can be brought against and defended by the government which allegedly took the property"); *see also Wolfsen Land & Cattle Co. v. U.S.*, 98 Fed. Cl. 507, 513 (2011) ("In a takings case, where the sole direct result of a judgment in favor of the plaintiff is a monetary award from the government, and where the proposed intervenor does not have an interest in the plaintiff's property, the proposed intervenor has only an indirect interest in the litigation." (citation omitted)); *Harmony W. Ashley, LLC v. City of Charleston, S.C.*, 2021 WL 805535, at *3 (D.S.C. Mar. 3, 2021) (quoting *Wolfsen Land & Cattle Co.*, 98 Fed. Cl. at 513). Nor do they have any interest in pursuing their second through fourth and sixth affirmative defenses, all of which relate solely to ExxonMobil's claims for

---

[34] Mot. at 14.

damages.  For these reasons, intervention should be denied as to all the claims to be adjudicated in Phase II.  At minimum, determining whether Proposed Intervenors have a right to, or should be granted permission to intervene on any claims stayed for Phase II should be decided *if and when* those claims are at issue, not at this stage.

**B.    Proposed Intervenors Fail to Demonstrate Inadequate Representation Necessary for Intervention as of Right.**

The motion to intervene as a right fails because Proposed Intervenors have not overcome the presumptions that the Board will adequately represent their interests.

1.    Proposed Intervenors and the Board Share the Same Ultimate Objective, Giving Rise to a Presumption of Adequate Representation.[35]

When a proposed intervenor and an existing party have "the same ultimate objective," courts presume adequacy of representation.  *Arakaki*, 324 F.3d at 1086. So when "the applicant's interest is identical to that of one of the present parties, a *compelling showing* should be required to demonstrate inadequate representation." *Id*. (emphasis added).  Here, Proposed Intervenors and the Board share the "same ultimate objective": upholding the Board's decision to deny ExxonMobil's trucking application based on the reasons that Proposed Intervenors proffered.  And Proposed Intervenors concede as much.  In arguing that their defenses share

[35] Although the ExxonMobil focuses on addressing the arguments raised by Proposed Intervenors through their motion—which appear to focus on the petition for writ of administrative mandate claim—courts have denied intervention to applicants seeking to intervene in actions consisting of constitutional violations for failure to demonstrate inadequate representation. *See, e.g., North Dakota v. Heydinger*, 288 F.R.D. 423, 431 (D. Minn. 2012) (finding in an action involving a violation of the commerce clause that movants failed to overcome the presumption of adequate representation by the government where the movants shared the same ultimate objective); *Pavlock*, 337 F.R.D. at 180 (finding in takings action that the government, charged with protecting the interests at stake, adequately represented the environmental intervenor's interests).

common questions of law and fact, Proposed Intervenors say they "would seek to defend the County's denial of the Project with respect to all the causes of action raised in ExxonMobil's complaint."[36]  Because Proposed Intervenors and the Board share the same underlying goal, there is a presumption of adequacy of representation, and Proposed Intervenors must make a compelling showing to rebut it.  *See Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (upholding denial of intervention because environmental organizations and the government shared the "same ultimate objective of upholding the Ordinance and Resolution" at issue); *see also League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997) (finding that the public-interest organization and the government shared the same ultimate objective of ensuring a proposition was upheld).

> 2.  <u>Proposed Intervenors Fail to Make a Very Compelling Showing Rebutting the Presumption that the Board Will Adequately Represent Their Interests.</u>

When the government is a party to an action "acting on behalf of a constituency that it represents," a presumption of adequate representation arises absent a "*very compelling showing* to the contrary." *Arakaki*, 324 F.3d at 1086 (emphasis added).  Here, the Board is charged with "provid[ing] quality public services to the people of Santa Barbara County in response to their need for a healthy, safe, and prosperous environment."[37]  Proposed Intervenors are part of the Board's constituency as they are composed of members "who live, work, and recreate" in the County and along the proposed trucking routes.[38]  And, the Board has demonstrated its willingness to accept, adopt, and advance Proposed

---

[36] Mot. at 24.

[37] County of Santa Barbara, Board of Supervisors, https://www.countyofsb.org/1599/Board-of-Supervisors.

[38] Mot. at 10.

Intervenors' arguments instead of the thoroughly researched and supported findings of the County's own agencies.[39]

The Ninth Circuit has held that "the most important factor in determining the adequacy of representation is how the interest compares with the interest of existing parties." *Id.* In assessing arguments about the adequacy of representation, courts will consider: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.*; *see also Perry*, 587 F.3d at 952. Here, the interests of the Board and Proposed Intervenors are wholly aligned. Proposed Intervenors have not identified a single argument that the Board will not or cannot advance on their behalf; nor have they identified any necessary information that is absent from the administrative record. Instead, they attempt to rebut the presumption of adequate representation by generally asserting an amorphous divergence of interests because (1) the Board's interests are purportedly broader than those of Proposed Intervenors,[40] and (2) Proposed Intervenors will represent environmental, conservation, and cultural concerns that "would not otherwise have a voice in this lawsuit."[41] Neither of these contentions meets the heightened threshold for showing inadequacy of representation.

*First*, Proposed Intervenors argue that the Board cannot or will not make all of their arguments because the Board must consider an array of interests—including economic considerations—while Proposed Intervenors' members focus exclusively on protecting environmental and cultural resources and would be "directly impacted

---

[39] *See, e.g., id.* at 3-5; Compl. ¶¶ 46-61.

[40] *See* Mot. at 19-22.

[41] *See id.* at 22-23.

by the Project in profoundly unique and personal ways."[42]  But as this Court has previously recognized, such generalized contentions do not overcome the presumption of adequacy of representation.  *See California Sea Urchin Comm'n v. Jacobson*, 2013 WL 12114517, at *5 (C.D. Cal. Oct. 2, 2013).[43]  Though the government "may have a duty to consider a broader public interest than Proposed Intervenors, [] this alone does not overcome the presumption of adequacy of representation." *Id.*; *see also Oakland Bulk*, 960 F.3d at 620 (finding unpersuasive an argument that the proposed intervenors' "focus on health, safety and environmental protections, as opposed to Oakland's broader concerns that include such matters as the City's finances and its contractual relationship… rebuts the presumption of adequacy").  Similarly, just because Proposed Intervenors "may have a *more personal* interest, in that their members actually enjoy various recreational and aesthetic uses of [areas along the proposed trucking route] and may suffer 'direct harm,'" does not mean that the Board will not adequately represent these interests. *Drakes Bay Oyster Co. v. Salazar*, 2013 WL 451813, at *7 (N.D.

---

[42] *See id.* at 19-21.

[43] Proposed Intervenors rely on *California Sea Urchin* to assert that the Board cannot adequately represent their interest because Proposed Intervenors compelled the Board to deny the Project. *See* Mot. at 22.  But this reliance is misplaced because, unlike in *California Sea Urchin*, Proposed Intervenors did not compel the Board's compliance through litigation, if at all.  That case concerned two groups of proposed intervenors: one that *sued* to compel the government's initial decision and one that did not.  Relying on Ninth Circuit precedent, the Court granted intervention as of right for the proposed intervenors who sued, finding that they did not have "sufficiently congruent interests" with the government.  2013 WL 12114517, at *4–5 ("The Ninth Circuit has generally held that applicants moving to intervene in defense of an agency action that they themselves compelled *through prior litigation* are not adequately represented by the defendants." (emphasis added; citing cases)).  But the Court found that the proposed intervenors—who did *not* sue had *not* rebutted the presumption of adequate representation because they had not shown that the government was unwilling to defend the decision at issue "or that their representation would be deficient." *Id.*  Here, the Proposed Intervenors suffer from the same deficiency, so their motion must be denied.

Cal. Feb. 4, 2013) (emphasis in original) (denying motion for intervention because, *inter alia*, proposed intervenors and defendant shared the same primary interest in protecting the bay).[44]

Proposed Intervenors must show that the Board's "broader interests would lead it to stake out an undesirable legal position." *Oakland Bulk*, 960 F.3d at 620; *see also Drakes Bay Oyster*, 2013 WL 451813, at *7 ("At best, Proposed Intervenors will offer an additional 'environmental perspective' to the elements—it is not that Defendants will abandon such argument merely because Defendants themselves do not personally enjoy uses of the area"); *California Sea Urchin*, 2013 WL 12114517, at *5 ("Proposed Intervenors 'must demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute.'" (quoting *California ex rel. Lockyer v. U.S.*, 450 F.3d 436, 444 (9th Cir. 2006))). Proposed Intervenors have made no such showing. Nor could they. There is no indication that the Board did or will abandon or concede any potentially meritorious arguments. The Findings for Denial demonstrate that the Board

---

[44] The cases cited by Proposed Intervenors were decided based on their unique facts and are distinguishable. In *Syngenta Seeds, Inc. v. County of Kauai*, not only were proposed intervenors' interest more narrow and palpable than the government's, the mayor had also gone on record stating that he believed the bill at issue was preempted by federal law and the county's budgetary constraints delayed its defense of the action. 2014 WL 1631830, at *2, *8 (D. Haw. Apr. 23, 2014). In *Forest Conservation Council v. U.S. Forest Service*, the proposed intervenors interests concerned a different area of land than that at issue in the case and were about indirect effects to their property, making their interests distinctively different from the government's. 66 F.3d 1489, 1499 (9th Cir. 1995) (abrogated on other grounds by *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)). No such countervailing concerns or misalignment of interests are present in this case. *See Drakes Bay Oyster*, 2013 WL 451813 at *7, n.5 (discussing and distinguishing cases findings of inadequacy of representation based on proposed intervenors' narrower personal interests). Here, Proposed Intervenors are environmental organizations seeking uphold the Project denial whose goals and interests align with the Board's.

1 listened to, agreed with, and—in certain instances—expressly incorporated

2 Proposed Intervenors' views and *evidence while disregarding the findings of the*

3 *County's agencies* tasked with reviewing the Project and the views of Board

4 members who voted in favor of the Project.  Those Findings, not the vote of any

5 individual Board Member, are the relevant subject of this case and what the

6 collective Board is charged with defending in this case.

7       Though the Board may not have incorporated all of Proposed Intervenors'

8 arguments, it is enough that the Board has shown its willingness to do so if

9 necessary.  *See Arakaki*, 324 F.3d at 1087 (clarifying that the question is "whether

10 existing defendants are capable and willing to make this argument *should it be*

11 *necessary*" (emphasis added)).  Any disagreements about which arguments to put

12 forth reflect only differences in litigation strategy, which are not enough to prove

13 inadequate representation.  *See id.* at 1086 ("Where parties share the same ultimate

14 objective, differences in litigation strategy do not normally justify intervention");

15 *see also Perry*, 587 F.3d at 954 ("Although it appears that the Proponents may not

16 defend Prop. 8 in the exact manner that the Campaign would, the Campaign has not

17 shown that Proponents have conceded any '*necessary* elements to the proceeding'"

18 (internal citations omitted)).  Here, the Board will have access to the comments and

19 evidence Proposed Intervenors submitted during the Project's four-year review,

20 contained within the *closed* administrative record, and can raise the arguments they

21 previously presented to the Board and Planning Commission.

22       **Second,** Proposed Intervenors argue that they will add necessary elements to

23 the case that the parties would neglect.[45]  Though Proposed Intervenors claim to

24 have specialized knowledge, that assertion is insufficient to rebut a presumption of

25 adequacy because they present no evidence that the Board or the Court could not

26 otherwise somehow obtain that knowledge.  *See Oakland Bulk*, 960 F.3d at 621.

27 They likewise have not shown that their "personal perspective or differing expertise

28 [45] *See* Mot. at 22-23.

that they bring to this action is necessary to the elements of the proceedings." *Drakes Bay Oyster*, 2013 WL 451813, at \*7; *see also California Sea Urchin*, 2013 WL 12114517, at \*5 ("Proposed Intervenors have also failed to demonstrate that they would offer any 'necessary elements to the proceedings that the other parties would neglect.'" (quoting *Arakaki*, 324 F.3d at 1086)); *Los Angeles SMSA Ltd. P'ship v. City of Los Angeles*, 2019 WL 4570012, at \*7 (C.D. Cal. July 31, 2019) (denying intervention as a matter of right on similar grounds in Section 1094.5 writ of mandate proceeding). As discussed above, in the motion, and in the supporting declarations, Proposed Intervenors had ample opportunity to provide the Board with their perspectives and evidence, and they seized that opportunity at every turn. Proposed Intervenors regularly conducted research, gathered evidence, submitted comments, and even testified in front of the Board. Their views are reflected in the administrative record. Particularly with regard to Phase I, the mandamus petition, the administrative record will form the base of the Board's defenses. Even if Proposed Intervenors were successful in their motion, they would not be able to provide this Court with any additional information.

## C. The Court Should Exercise its Discretion to Disallow Permissive Intervention.

If a proposed intervenor fails to prove intervention as of right, courts have broad discretion to deny permissive intervention. *See Orange County*, 799 F.2d at 538. Once a court determines that the threshold requirements have been met, "it is then entitled to consider other factors in making its discretionary decision on the issue of permissive intervention." *Callahan*, 42 F.4th at 1022 (affirming that "the three initial conditions for permissive intervention were met here but that 'the discretionary factors governing intervention counsel strongly against intervention.'"); *see also Spangler*, 522 F.2d at 1329. Here, the Court should exercise its discretion to deny permissive intervention. Again, Proposed Intervenors interests are adequately represented by the Board. The Board shares the

1   same ultimate objective of upholding its decision to deny ExxonMobil's trucking

2   application and is presumed to sufficiently represent its constituents absent a

3   compelling showing otherwise. *See, e.g., Perry*, 587 F.3d at 955; *Los Angeles*

4   *SMSA Ltd. P'ship*, 2019 WL 4570012, at *9 (denying permissive intervention

5   because applicant's interests were adequately represented by the defendant). And

6   Proposed Intervenors' participation here will not contribute to the factual

7   development of issues, as the evidence for Phase I will primarily consist of the

8   closed administrative record. That record already includes documentation and

9   testimony submitted by these organizations, and the Board can reference and cite

10  that evidence in its defense.

11       Beyond being unnecessary, Proposed Intervenors' participation in this case

12  will result in prejudice and delay, which strongly weighs against granting

13  permissive intervention. Courts have denied permissive intervention where a

14  movants' inclusion "would unnecessarily complicate the litigation." *Arakaki*, 324

15  F.3d at 1082. As their motion and supportive declarations make clear, Proposed

16  Intervenors try to shift the focus of this litigation from whether the Board should

17  have approved ExxonMobil's trucking project and instead focus on a separate,

18  irrelevant issue: Proposed Intervenors' desire for a referendum on the production,

19  transport, and use of oil in and off the coast of Santa Barbara County.[46] Allowing

---

[46] *See* Mot. at 6-9, 16, *see also* Cummings Decl. ¶¶ 8, 14 (discussing the harmful
impacts of offshore oil drilling and CBD's involvement in opposing onshore oil and
gas development and their work to obtain protections for various species threatened
by ExxonMobil's trucking project); Davis Decl. ¶¶ 5-7 (noting Sierra Club's
interest in and efforts to support a transition away from oil in the county and its
concerns about the dangers of oil and gas drilling and transportation and its
contribution to the ongoing climate crisis); Hough Decl. ¶¶ 4, 6 (expressing concern
about exacerbating climate change with further oil and gas development and stating
that SBCAN's focus has been on "the need to transition to clean energy"); Kelley
Decl. ¶ 6 (declaring his support for efforts and further reduction of oil extraction
and dependency); Krop Decl. ¶ 7 (explaining EDC's historical efforts to retire
offshore oil leases, prevent new oil and development projects, stop efforts to import
natural gas, to oppose oil transportation projects); Lyons Decl. ¶ 4 (describing

Proposed Intervenors to become a defendant in this action would not only distract from the merits of ExxonMobil's claim but also require review, argument, and consideration of duplicative information already in the record, thereby increasing the costs of the litigation and the amount of time and resources ExxonMobil and the Court will have to expend to resolve it.  Proposed Intervenors' participation will require ExxonMobil to respond to separate—and likely duplicative briefings—even if the Proposed Intervenors coordinate to file combined briefs.  Where "intervention would be redundant and would impair the efficiency of the litigation," it is proper to deny permissive intervention. *California v. Tahoe Reg'l Plan. Agency*, 792 F.2d 775, 779 (9th Cir. 1986).  In the interests of equity and judicial economy, the Court should deny permissive intervention here.

### D.   In the Alternative, Proposed Intervenors' Interests Can Be Adequately Represented Through a Joint Amici Brief.

The Court should not grant intervention as a matter of right or permissive intervention.  But if the Court finds that Proposed Intervenors' participation in this action is warranted, it can allow them to protect their interests by permitting them to file a joint amici brief, the filing of which ExxonMobil would not oppose. *See Perry*, 587 F.3d at 950 (affirming denial of a motion to intervene where district court had noted that proposed intervenor could have sought leave to file an amicus brief); *Drakes Bay Oyster*, 2013 WL 451813, at *9 (denying motion to intervene but granting proposed intervenors "leave to request permission to file an amicus brief on specific issues in this litigation"); *Los Angeles SMSA Ltd. P'ship*, 2019 WL 4570012, at *9 (denying motion to intervene but granting "permission to file an amicus curiae brief in support of the [defendant's] forthcoming cross-motion for

GOO's mission as being focused on getting "rid of the Santa Barbara Channel of existing oil development and to prevent any new oil projects from being approved…"); Nelson Decl. ¶ 5 (noting that Surfrider has spent years challenging oil and gas leasing expansion nationwide and referring to the organization's dedication to protect the California coastline from threats of oil and gas development and transportation).

1    summary judgment").  By allowing Proposed Intervenors to file an amici brief, the

2    Court would afford these organizations the ability to advocate on behalf of their

3    members.  Although Proposed Intervenors have not stated that they will seek

4    discovery or otherwise disrupt the motion schedule the parties have agreed to,

5    "there is a possibility that this situation would evolve after [their] intervention."[47]

6    Participation as amici addresses this risk without unduly restricting their ability to

7    participate since Phase I of the case will in all likelihood be resolved at summary

8    judgment.  As amici, Proposed Intervenors would have the opportunity to present

9    their purportedly unique interests and "have a say in [this] matter."[48]  Any such

10   amici brief should be filed shortly after the Board's opening brief, to allow

11   ExxonMobil a full opportunity to respond.

12        **E.    If the Court Grants Intervention, It Should Require All Proposed
               Intervenors to Submit Joint, Consolidated Briefs that Do Not
13             Raise or Address Issues Covered by the Board.**

14        Should the Court determine intervention is appropriate, it should order

15   Proposed Intervenors to submit joint, consolidated briefing that does not address

16   issues briefed by the Board.  Joint and non-duplicative briefing would promote

17   efficiency, reduce the risk of duplicative arguments, and help reduce costs.  The

18   Court has discretion to impose conditions on intervention.  *See, e.g., Van*

19   *Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181 (9th Cir. 1974) *decision*

20   *supplemented*, 503 F.2d 1131 (9th Cir. 1974) (finding that district courts have

21   discretion under Rule 24(b) to grant, deny, or limit intervention to particular

22   issues); *Ctr. for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1130 (N.D.

23   Cal. 2007) (noting that the court's discretion is broad and can include limitations to

24   intervention on certain issues or purposes); *see also Stringfellow v. Concerned*

25   *Neighbors in Action,* 480 U.S. 370, 383 n.2 (1987) ("An intervention of right under

26   the amended rule [24(a)] may be subject to appropriate conditions or restrictions

27   ―――――――――――――
     [47] *Id*.
28   [48] Mot. at 25.

responsive among other things to the requirement of efficient conduct of proceedings." (quoting Fed. R. Civ. P. 24(a) Advisory Committee notes to 1966 amendment)).

Proposed Intervenors suggest similar conditions themselves, having proposed "filing combined briefs… and coordinating with the County to minimize duplication."[49]  They are represented by the same counsel, moved jointly to intervene in this case, and submitted a joint proposed Answer.[50]  Proposed Intervenors all seek to uphold the denial of the Project on similar grounds and have not demonstrated that their interests are sufficiently distinct to require separate pleadings.  This Court previously ordered joint intervenor briefing under similar circumstances in *California Sea Urchin* and should do so here if it grants intervention.  *See* 2013 WL 12114517, at *6 ("Because Proposed Intervenors are all environmental groups asserting similar interests and do not offer any concrete reasons why they would need separate briefs or are unable to coordinate their respective positions in a joint brief, the Court finds that joint briefing is appropriate to avoid duplication, inefficiency, and undue burden on the Court's and the parties' resources.").  Further, Proposed Intervenors and the Board should be ordered to "coordinate briefing so as to avoid duplication of effort and repetitive legal arguments," *id.,* and Proposed Intervenors should not raise any issues briefed by the Board.

## III.  **CONCLUSION**

For the foregoing reasons, ExxonMobil respectfully requests that the Court deny the motion and preclude the applicant organizations from intervening in this action.  Alternatively, ExxonMobil requests that the Court grant Proposed Intervenors leave to participate as amici and file a single brief shortly after the Board's opening brief is due and not alter the Court-ordered schedule.  In the

---

[49] *See id*. at 24.

[50] *See* Proposed Defendant-Intervenors' [Proposed] Answer to Verified Petition for Writ of Mandate and Complaint for Declaratory Relief and Damages (Dkt. 18-12).

further alternative, if intervention is granted, ExxonMobil requests that Proposed
Intervenors be ordered to file joint briefing that does not duplicate the Board's
briefing.

        Dated:  September 30, 2022          Respectfully submitted,


                                            By:   */s/ Dawn Sestito*
                                                  Dawn Sestito

                                            Attorneys for Petitioner and Plaintiff
                                            Exxon Mobil Corporation