RACHEL VAN MULLEM, COUNTY COUNSEL
MARY PAT BARRY, SR. DEPUTY (Bar No. 148354)
COUNTY OF SANTA BARBARA
105 E. Anapamu St., Suite 201
Santa Barbara, CA  93101
(805) 568-2950  /  FAX: (805) 568-2982
E-mail: mpbarry@countyofsb.org

Attorneys for Respondent and Defendant
SANTA BARBARA COUNTY
BOARD OF SUPERVISORS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXXON MOBIL CORPORATION,<br><br>Petitioner and Plaintiff,<br><br>v.<br><br><br><br><br><br><br><br><br><br>SANTA BARBARA COUNTY<br>BOARD OF SUPERVISORS,<br><br>Respondent and Defendant,<br><br>and<br><br>ENVIRONMENTAL DEFENSE<br>CENTER, GET OIL OUT!,<br>SANTA BARBARA COUNTY<br>ACTION NETWORK, SIERRA<br>CLUB, SURFRIDER<br>FOUNDATION, CENTER FOR<br>BIOLOGICAL DIVERSITY, AND<br>WISHTOYO FOUNDATION,<br><br>Intervenors. | Case No: 2:22-cv-03225 DMG (MRWx)<br><br>**RESPONDENT AND DEFENDANT SANTA BARBARA COUNTY BOARD OF SUPERVISORS' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO PETITIONER/PLAINTIFF EXXON MOBIL CORPORATION'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: June 16, 2023<br>Time: 2:00 p.m.<br><br>Judge: Hon. Dolly M. Gee<br>Courtroom: 8C, First St. Courthouse |

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

Respondent/Defendant Santa Barbara County Board of Supervisors hereby respectfully submits the below Memorandum of Points and Authorities in opposition and reply to Petitioner/Plaintiff Exxon Mobil Corporation's Memorandum of Points and Authorities in Support of Petitioner/Plaintiff Exxon Mobil Corporation's Cross-Motion for Summary Judgment and Opposition to Respondent/Defendant's and Intervenors' Motions for Summary Judgment on First Cause of Action for Writ of Administrative Mandate ("Cross-Motion" or "Cross-Motion & Opposition" or "Cross-Mot. & Opp'n").

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

ii.
RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................v

MEMORANDUM OF POINTS  AND AUTHORITIES .....................................1

INTRODUCTION ......................................................................1

ARGUMENT..........................................................................2

I.     THE SUBSTANTIAL EVIDENCE TEST IS THE CORRECT STANDARD OF REVIEW BECAUSE THE BOARD'S DECISION DID NOT SUBSTANTIALLY AFFECT A FUNDAMENTAL VESTED RIGHT...................................2

     A.   Exxon Has No Vested Right To Transport SYU Oil By Truck ...........................................................3

     B.   Exxon Has No Fundamental Right To Transport SYU Oil By Truck..........................................................4

II.    THE BOARD'S DENIAL OF THE MODIFIED PROJECT AS NONCOMPLIANT WITH THE COUNTY'S LOCAL LAND USE REGULATIONS WAS NOT AN ABUSE OF DISCRETION ...................................................8

     A.   Substantial Evidence Supports The Board's Finding That The Streets And Highways Would Not Be Adequate, And Are Not Properly Designed, To Carry 78 Tanker Trucks Loaded With Crude Oil Seven-Days Per Week And 24 Hours Per Day................................................9

     B.   Substantial Evidence Supports The Board's Finding That The Modified Project Would Be Detrimental To The Comfort, Convenience, General Welfare, Health And Safety Of The Neighborhood And Would Be Incompatible With The Area Surrounding The Trucking Routes ...........................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

C.   The Board Did Not Fail To "Bridge The Analytic Gap" Between The Evidence And The Board's Final Decision ..................................................................................... 14

III.   SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S DETERMINATION THAT IT COULD NOT CONSIDER THE UNAVOIDABLE RISK OF AN OIL SPILL TO BE ACCEPTABLE, AND THEREFORE COULD NOT APPROVE THE MODIFIED PROJECT UNDER ANY CIRCUMSTANCES .......................................................................... 16

IV.   THE BOARD DID NOT FAIL TO PROCEED IN THE MANNER REQUIRED BY LAW ...................................................... 18

CONCLUSION ............................................................................................. 20

CERTIFICATE OF COMPLIANCE .............................................................. 21

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

# TABLE OF AUTHORITIES

**Federal Cases**

*Acad. of Our Lady of Peace v. City of San Diego,*
  835 F.Supp.2d 895 (S.D. Cal. 2011) ................................................................. 13

*Cal. RSA No. 4 v. Madera County,*
  332 F.Supp.2d 1291 (E.D. Cal. 2003) ............................................................... 16

*E & B Natural Res. Mgmt. Corp. v. County of Alameda,*
  No. 18-cv-05857-YGR, 2020 WL 3050736 (N.D. Cal. June 8, 2020) .............. 8

**State Cases**

*Anderson v. City of La Mesa,*
  118 Cal.App.3d 657 (Cal. Ct. App. 1981) ......................................................... 6

*Bixby v. Pierno,*
  4 Cal.3d 130 (1971) ...................................................................................... 3, 4

*Breneric Assoc. v. City of Del Mar,*
  69 Cal.App.4th 166 (Cal. Ct. App. 1998) ......................................................... 9

*Cherry Valley Pass Acres & Neighbors v. City of Beaumont,*
  190 Cal.App.4th 316 (Cal. Ct. App. 2010) ..................................................... 16

*Desmond v. County of Contra Costa,*
  21 Cal.App.4th 330 (Cal. Ct. App. 1993) ......................................................... 9

*Gabric v. City of Rancho Palos Verdes,*
  73 Cal.App.3d 183 (Cal. Ct. App. 1977) ........................................................ 19

*Goat Hill Tavern v. City of Costa Mesa,*
  6 Cal.App.4th 1519 (Cal. Ct. App. 1992) ........................................ 4- 8, 11, 12

*Guinnane v. San Francisco City Planning Comm'n,*
  209 Cal.App.3d 732 (Cal. Ct. App. 1989) ................................................ 11, 15

*Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.,*
  202 Cal.App.4th 404 (Cal. Ct. App. 2011) ................................................... 7, 8

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

v.

RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

*Harlow v. Carleson*,
  16 Cal. 3d 731 (1976)...........................................................................3

*Harrington v. City of Davis*,
  16 Cal.App.5th 420 (Cal Ct. App. 2017) ........................................20

*Linborg-Dahl Investors, Inc. v. City of Garden Grove*,
  179 Cal.App.3d 956 (Cal. Ct. App. 1986) ......................................13

*McCarthy v. Cal. Tahoe Reg'l Planning Agency*,
  129 Cal.App.3d (Cal. Ct. App. 1982) ...............................................3

*Mobil Oil Corp. v. Superior Court*,
  59 Cal.App.3d 293 (1976)..................................................................7

*San Marcos Mobilehome Park Owners' Assn. v. City of San Marcos*,
  192 Cal.App.3d 1492 (1987)..............................................................6

*Standard Oil Co. v. Feldstein*,
  105 Cal.App.3d 590 (1980)................................................................7

*The Termo Co. v. Luther*,
  169 Cal.App.4th 394 (Cal. Ct. App. 2008) ...........................4, 5, 7, 8

*Topanga Ass'n for a Scenic Cmty. v. County of Los Angeles*,
  11 Cal.3d 506 (1974)........................................................................14

**State Statutes**

Cal. Civ. Proc. Code § 1094.5 .............................................................4

Cal. Pub. Res. Code § 20181 .............................................................16

**State Regulations**

Cal. Code Regs. tit 14, § 15093(b) ....................................................16

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Petitioner/Plaintiff Exxon Mobil Corporation ("Exxon") has filed its opposition to Respondent/Defendant Santa Barbara County Board of Supervisors' (the "Board") Motion for Partial Summary Judgment ("Motion" or "Mot."). Together with its opposition, Exxon has filed a cross-motion for summary judgment on its first cause of action for writ of administrative mandate.

Exxon asserts that it developed its Santa Ynez Unit ("SYU") "in reliance on the fact that SYU would continue to operate and have access to the market, as contemplated by both the [Final Development Plan permit ("Permit")] and Santa Barbara policy and local law." Cross-Mot. & Opp'n at 13. Exxon's suggestion that the Board has interfered with Exxon's operation of SYU, and access to the market, demonstrates Exxon's utter denial of reality. Exxon's operation of SYU was interrupted when an oil industry partner's pipeline ruptured.

Two years later, Exxon applied to modify its Permit to allow interim oil transportation by truck. While its application was pending, another of Exxon's oil industry partners announced the closure of its Santa Maria Pump Station ("SMPS"), which was the planned destination for Exxon's proposed tanker trucks. That announcement dramatically impacted Exxon's interim trucking proposal by eliminating SMPS as a destination for SYU crude oil.

Exxon's posturing as the victim of County of Santa Barbara ("County") decision makers is contrary to reason and common sense. The facts of this case demonstrate that Exxon is a business with a Permit, must adhere to Permit conditions, and is dependent on other businesses to get its product to market. That dependence on others put Exxon in its current situation.

Public comment in the administrative record in this case included the following question:

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

1.

> Why must we place our residents at risk when the pipeline break which made it impossible for Exxon to move oil via pipeline, as required, was the result of the oil industry cutting corners by not monitoring the pipeline company carefully and requiring updating of the pipeline and its technology?

[52 AR 023394.] The Board effectively answered this question in finding, based on substantial evidence in the administrative record and County policies, that County residents could not be placed at such risk. Summary judgment in favor of the Board and against Exxon is proper here because, as a matter of law, evidence in the administrative record permitted the Board to make the decision denying modification of Exxon's Permit to allow interim transportation of crude oil by truck.

## ARGUMENT

**I.      THE SUBSTANTIAL EVIDENCE TEST IS THE CORRECT STANDARD OF REVIEW BECAUSE THE BOARD'S DECISION DID NOT SUBSTANTIALLY AFFECT A FUNDAMENTAL VESTED RIGHT.**

In its Motion for Partial Summary Judgment on Petitioner/Plaintiff's First Cause of Action ("Motion" or "Mot."), the Board asserts that the substantial evidence test applies to Exxon's first cause of action. Mot. at 10-11. In its Cross-Motion & Opposition, Exxon argues that the standard of review applicable to the Board's Motion and to Exxon's Cross-Motion, is independent judgment review. Cross-Mot. & Opp'n at 15-18. Exxon's argument rests on Exxon's assertion that the Board's refusal to modify Exxon's Permit to allow the transport of SYU oil by truck (for a period of up to seven years) prevents Exxon from continuing its business of operating the SYU, and thereby "substantially affects Exxon's undisputed, fundamental vested right to restart and operate SYU." Cross-Mot. & Opp'n at 15, 17.

In analyzing whether an administrative decision substantially affects a fundamental vested right and therefore requires independent judgment review, courts "consider the nature of the right of the individual: whether it is a

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

2.
RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

fundamental and basic one, which will suffer substantial interference by the action of the administrative agency, and, if it is such a fundamental right, whether it is possessed by, and vested in, the individual or merely sought by him." *Bixby v. Pierno,* 4 Cal.3d 130, 144 (1971).

### A.   Exxon Has No Vested Right To Transport SYU Oil By Truck.

For purposes of determining the scope of judicial review, the term "vested" denotes generally a right already possessed. *Bixby v. Pierno,* 4 Cal.3d 130, 146 (1971); *McCarthy v. Cal. Tahoe Reg'l Planning Agency,* 129 Cal.App.3d at 229-230 (Cal. Ct. App. 1982). "On this basis, this court has distinguished generally between applicants and recipients in determining whether a right is 'vested' for the limited purpose of determining the applicable scope of review." *Harlow v. Carleson*, 16 Cal. 3d 731, 735 (1976).

For Exxon to be correct that it has a vested right, its existing Permit would have to authorize the transport of SYU oil by truck. It does not. Rather, the Permit requires that "[a]ll oil processed by ExxonMobil's oil treatment facility shall be transported from the facility and the County by pipeline in a manner consistent with Santa Barbara County Local Coastal Plan Policy 6-8." [67 AR 030865.] The Permit does not authorize transport by any method other than pipeline. In fact, the Permit conditions establish that Exxon must obtain permission to transport oil by a mode other than pipeline. [67 AR 030865 ("[t]ransportation by a mode other than pipeline **may be permitted** only in accordance with Coastal Zoning Ordinance Section 35-154.5(i), applicable Local Coastal Plan policies and Control Measure R-12 of the Air Quality Attainment Plan, to the extent it is applicable." (emphasis added)).] The Permit provides that Exxon must obtain a new or modified permit if it seeks to modify any procedures contained in the Permit. [67 AR 030851 ("Project Description and Modifications").] In compliance with the Permit, Exxon submitted its

///

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

3.

request for modification of Permit conditions to the County for approval, and in this lawsuit, challenges the County's denial of that request.

For purposes of determining the applicable standard of review under California Code of Civil Procedure section 1094.5, Exxon is dismissive of the fact that the Permit grants it no right to transport SYU oil by truck. Cross-Mot. & Opp'n at 17:5-7. But this fact is part of the assessment of whether or not the Board's decision affected a "vested" right. Exxon was an applicant for permission to truck oil; it possessed no right to truck oil. This is why Exxon, as required by its Permit, submitted an application seeking a permit modification to allow transport by truck. [1 AR 146:6-14 ("[W]e're just here for the temporary trucking permit. If a pipeline was available, we could resume production today without the need to acquire any permits. But it's not available.").] Exxon's status as an applicant makes it clear that no vested right is implicated here. Exxon has no preexisting right to truck its oil, and therefore has no vested right for review purposes.

**B.      Exxon Has No Fundamental Right To Transport SYU Oil By Truck.**

"In determining whether a right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation." *Bixby,* 4 Cal.3d at 144. In analyzing the fundamental nature of an asserted right, the California Supreme Court manifests "slighter sensitivity to the preservation of purely economic privileges." *Id.* at 145.

To persuade the Court to apply the independent judgment test, Exxon relies on *Goat Hill Tavern v. City of Costa Mesa,* 6 Cal.App.4th 1519 (Cal. Ct. App. 1992) and *The Termo Co. v. Luther,* 169 Cal.App.4th 394 (Cal. Ct. App. 2008). Cross-Mot. & Opp'n at 15-17. These two cases, both of which concerned applications for conditional use permits rather than modifications of

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

4.
RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

development permits, are easily distinguished because denial of Exxon's request to modify its permit does not end Exxon's SYU business. In fact, Exxon concedes that unlike the circumstances in *Goat Hill Tavern* and *The Termo Co.*, the decision at issue in this case does not amount to government action putting Exxon out of business. Exxon is careful to state only that the Board's decision prevents Exxon from transporting oil to market "for the foreseeable future" and "threatens" (but does not eliminate) SYU's continued existence. Cross-Mot. & Opp'n at 15.

The fact is that denial of Exxon's application means Exxon remains able to transport its SYU oil by pipeline pursuant to its Permit. And Exxon expects to resume pipeline transport. [65 AR 29886 ("ExxonMobil is seeking a permit that would end when the transport pipeline becomes available.").] This is evident from Exxon's action of applying for a permit modification to last just seven years or until a pipeline becomes available, whichever is shorter. [37 AR 014841 (SEIR section 1.0.] Notably, Exxon informs the Court that via a subsidiary, it now owns the pipelines (Lines 901 and 903) formerly owned by Plains All American Pipeline, LLC ("Plains"). Cross-Mot. & Opp'n at 3 n.2.[1] This fact indicates that Exxon expects to return to transporting SYU oil by pipeline in the foreseeable future.

The decision in *Goat Hill Tavern* was based on the unique facts presented by that case. *Goat Hill Tavern,* 6 Cal.App.4th at 1529-1530. Such facts are not present here. In *Goat Hill Tavern*, a tavern owner sought a writ of administrative mandate ordering the city council to renew a conditional use permit. The unique facts included that the tavern had been in business under a prior owner since before the enactment of the current zoning ordinance and therefore existed as a

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

---

[1] Line 901 ruptured in May, 2015. Plains then shut down Lines 901 and 903. Exxon's dependence on Plains left it with no pipeline to transport SYU oil. Motion at 3:5-13.

RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

legal nonconforming use. *Id.* at 1522. A conditional use permit was issued allowing the tavern to have a beer garden. *Id.* Later, the owner applied for a conditional use permit for an unpermitted expansion that added a game room to the tavern. When the City of Costa Mesa discovered that the conditional use permit had expired, the owner requested a renewal. Ultimately, an application for renewal was denied and the tavern sought a writ of administrative mandamus compelling the city to renew the permit. *Id.* at 1525. The trial court applied the independent judgment test. *Id.* The threshold issue on appeal was whether the tavern owner had a vested fundamental right to continue operation of the tavern. *Id.* at 1526.

The court acknowledged that "courts have rarely upheld the application of the independent judgment test to land use decisions." *Id.* at 1527. In those rare instances the rights involved have been "classic vested rights," e.g. where a plaintiff built her home in good faith reliance on a building permit issued by the city and was denied a variance after the city claimed an ordinance required a different set back than that allowed under the permit. *Id.* (discussing *Anderson v. City of La Mesa,* 118 Cal.App.3d 657, 660 (Cal. Ct. App. 1981). The court concluded that the tavern owner did have such a right due to the tavern's operation as a legal non-conforming use for years, notwithstanding the more recent addition of the game room by the conditional use permit. *Id.* at 1526. On these unique facts, the court applied the independent judgment standard of review. *Id.* at 1527.

Exxon's circumstances have no similarity to the tavern owner in *Goat Hill Tavern* because there is no evidence in record showing that the Board's denial of interim trucking puts Exxon out of business. On these facts, Exxon cannot be deemed to have a fundamental right. In *Goat Hill Tavern*, the court reviewed cases where the independent judgement test did not apply. *Goat Hill Tavern,* 6 Cal.App.4th at 1527-1528 (discussing *San Marcos Mobilehome Park Owners'*

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

6.
RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

*Assn. v. City of San Marcos,* 192 Cal.App.3d 1492 (1987); *Mobil Oil Corp. v. Superior Court*, 59 Cal.App.3d 293 (1976); *Standard Oil Co. v. Feldstein*, 105 Cal.App.3d 590 (1980)). In those cases, "the courts held the administrative actions implicated purely economic interests because there were no contentions, nor evidence, that the actions would force the companies out of business or cause them to lose their property." *Id.* at 1528. The tavern owner's case was different because "[t]he avowed purpose and result of the city's decision is to shut down Goat Hill Tavern." *Id.*

Similarly, *The Termo Co.* case is not instructive here. In *The Termo Co.*, petitioners were two companies challenging an administrative order directing the plugging and abandonment of 28 unabandoned oil wells. The wells were owned or operated by petitioners and had been idle for seven years. *The Termo Co.*, 169 Cal.App.4th at 399-400. The appellate court determined that the lower court erred in applying the substantial evidence standard of review. That conclusion was based on the fact that the decision eliminated the right of the owners of the oil wells to bring the wells back on line, operate them, and extract oil, i.e. the decision shut down a business and terminated the right to produce oil. *Id.* at 407. The court applied the principles of *Goat Hill Tavern* and determined that a fundamental vested right was at issue so that the independent judgment applied. *Id.* at 408.

This case is more akin to *Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 202 Cal.App.4th 404 (Cal. Ct. App. 2011). In *Hardesty*, owners of an open-pit mining operation challenged an order directing them to cease operation of their equipment until they obtained a permit from the Sacramento Metropolitan Air Quality Management District. *Hardesty,* 202 Cal.App.4th at 408. The owners' writ petition was denied and they appealed, arguing that the trial court's failure to use the independent judgment standard was error. *Id.* The appellate court affirmed the trial court's order denying the writ petition, finding

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

7.

RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

"nothing in the administrative record to indicate that [plaintiff] w[ould] be driven out of business by the requirement that it secure a permit from the District." *Id.* at 416. The appellate court held the owners had no fundamental vested right to emit air pollution without a permit and that the trial court had properly used the substantial evidence standard. *Id.* at 408. The *Hardesty* court found *Goat Hill Tavern* and *The Termo Co.* unpersuasive. *Id.* at 416-417.

Exxon has presented no evidence that denial of the interim trucking plan would do anything more than leave Exxon in the same position it has been in since the pipeline rupture. There is no evidence in the record that denial of Exxon's application to modify the Permit to allow interim trucking will shut down Exxon or force Exxon out of business. Exxon confronts the same economic costs it has handled since the pipeline ruptured, and has failed to show harm to its economic interests sufficient to confer a fundamental vested right. *See E & B Natural Res. Mgmt. Corp. v. County of Alameda,* Case No. 18-cv-05857-YGR, 2020 WL 3050736, \*5 n.7 (N.D. Cal. June 8, 2020) (finding *The Termo Co.* unpersuasive).

Exxon has no vested right affected by the Board's decision. Exxon has no fundamental right affected by the Board's decision. For these reasons, the independent judgment test does not apply, and the Court should apply the substantial evidence test in analyzing the Motion and Cross-Motion.

## II.  THE BOARD'S DENIAL OF THE MODIFIED PROJECT AS NONCOMPLIANT WITH THE COUNTY'S LOCAL LAND USE REGULATIONS WAS NOT AN ABUSE OF DISCRETION.

In its Motion, the Board established that substantial evidence supported the Board's administrative findings. Mot. at 11-18. In its Cross-Motion and Opposition, Exxon argues the contrary. Cross-Mot. & Opp'n at 32-35. The Board's Motion sets forth the Board's arguments that both support its Motion and, consequently, oppose Exxon's Cross-Motion and are therefore incorporated by reference.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

8.

RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

Exxon's burden under the substantial evidence standard of review is to show that all of the Board's findings lack support. If any finding in support of the Board's decision is supported by substantial evidence, the Board's rejection of Exxon's application to modify the Permit must be upheld. *Breneric Assoc. v. City of Del Mar*, 69 Cal.App.4th 166, 176 (Cal. Ct. App. 1998).

"Substantial evidence" has been defined in two ways: (1) as evidence that is reasonable in nature, credible, and of solid value; and (2) as relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Desmond v. County of Contra Costa,* 21 Cal.App.4th 330, 335 (Cal. Ct. App. 1993).

### A. Substantial Evidence Supports The Board's Finding That The Streets And Highways Would Not Be Adequate, And Are Not Properly Designed, To Carry 78 Tanker Trucks Loaded With Crude Oil Seven-Days Per Week And 24 Hours Per Day.

Exxon asserts that the Board's determination that it could not find that streets and highways would be adequate and properly designed to carry the type and quantity of traffic generated by the Modified Project is not supported by substantial evidence. Cross-Mot. & Opp'n at 20-24. Exxon argues that these findings, made under the County's Land Use and Development Code ("LUDC") Section 35.82.080.E.1(c) and Article II Coastal Zoning Ordinance ("CZO") Section 35-174.7.1(c), show that the Board did not consider all of the relevant evidence before it, so that its findings are not supported by substantial evidence in light of the whole record. Cross-Mot. & Opp'n at 32.

The evidence Exxon contends the Board did not consider was contained in Section 4.5 of the Revised Final Supplemental Environmental Impact Report ("SEIR") entitled "Transportation and Circulation" and in the Final Traffic & Circulation Study dated February 19, 2019, which was prepared by Associated Transportation Engineers ("ATE"). Cross-Mot. & Opp'n at 33 (citing 38 AR 015090-015126 and 40 AR 017639-017675). As stated in the SEIR, major

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

9.

RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

portions of Section 4.5 were based on ATE's Final Traffic & Circulation Study. [38 AR 015087.] Exxon also cites two tables in the SEIR's Section 4.3, which is entitled "Hazardous Materials and Risk of Upset." Cross Mot. & Opp'n at 21 (Figure 4.3-13), 33 (citing 38 AR 015018-015020). These tables do not document risks of traffic accidents resulting in fatalities or injuries. Rather, they document "societal risk profiles (known as F/N curves) to determine the significance of hazardous material releases" and concern risks associated with both collision and non-collision incidents resulting in hazardous materials releases. [38 AR 015017-015018.]

Exxon asserts that the Board cast aside the content of Section 4.5 of the SEIR in favor of "anecdotal evidence" presented by the public. Cross Mot. & Opp'n at 33:8-10. Exxon overlooks that the Board considered Section 4.5 and specifically referenced that part of the SEIR in its findings. [1 AR 12 (citing 38 AR 015093; 38 AR 015106-015108).] The Board recognized that the Modified Project, following the closure of SMPS, would put 78 loaded tanker trucks on Calle Real, Highway 101, and State Route 166. As referenced by the Board, the loaded tanker trucks would travel segments of Highway 101 and State Route 166 that were determined to have accident rates above the state average. [1 AR 12.]

The Final Traffic & Circulation Study was submitted by ATE on February 19, 2019. A Traffic Study Addendum, dated November 19, 2019, responded to comments made by Caltrans after its review of the draft SEIR. [41 AR 017768-017802.] These reports were based on data from 2018 and earlier. [38 AR 015090.] Section 4.5 of the SEIR does not discuss or analyze specific oil tanker accidents. The Board, however, considered the whole record. Mot. at 11-18.

Consideration of the whole record required the Board to consider public comment from local residents describing their lived experience of driving on State Route 166. Local residents described current road conditions of State

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

10.

Route 166. Mot. at 14. To the extent Exxon contends that the concerns about traffic and road safety expressed by County residents, particularly those who live and work in the Cuyama Valley, do not support the Board's findings, the argument is specious. Those concerns fall well within the domain of the public interest and welfare. *Guinnane v. San Francisco City Planning Comm'n*, 209 Cal.App.3d 732, 743 (Cal. Ct. App. 1989).

Evidence of actual accidents on State Route 166 involving tanker trucks provided the Board with a specific factual foundation corroborating the dangers described by members of the public. Mot. at 15-16. [58 AR 025593-025637.] The Board's decision was influenced by evidence in the record making it clear that SMPS would soon close, so that all 78 tanker trucks leaving LFC every 24-hours would have to travel State Route 166. [1 AR 000156:3-23; 1 AR 000158:5-17; 1 AR 000175:5-14.] Evidence in the record considered by the Board met both definitions of "substantial evidence" because it was reasonable in nature, credible, of solid value, and was relevant evidence that a reasonable mind might accept as adequate to support a conclusion.

**B. Substantial Evidence Supports The Board's Finding That The Modified Project Would Be Detrimental To The Comfort, Convenience, General Welfare, Health And Safety Of The Neighborhood And Would Be Incompatible With The Area Surrounding The Trucking Routes.**

Exxon argues that the Board's inability to find that the Modified Project would not be detrimental to the comfort, convenience, general welfare, health, and safety of the neighborhood and would not be incompatible with the surrounding area was based on evidence that "was not specific to the Project." Cross-Mot. & Opp'n at 24:12-15. Exxon states that evidence the Board relied on regarding the behavior of other drivers, accident rates, and past oil tanker accidents that did not involve Exxon, is all evidence providing no valid basis for denial. Exxon's reliance on *Goat Hill Tavern* is misplaced. In *Goat Hill Tavern,* the court found that a tavern's use permit could be revoked if such a business is

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

a public nuisance. However, the court found that police records introduced by the tavern owner showed that the number of incidents reported at the tavern were less that the number at most other bars and restaurants in the area so the evidence did not support a finding that the tavern, rather than other possible causes, were creating a public nuisance. *Goat Hill Tavern,* 6 Cal.App.4th at 1531. Here, the very facts that Exxon cannot control its contract truck drivers beyond the mitigation measures proposed under Risk Factor number one, and cannot control other drivers or road conditions, are the facts that support denial of the Modified Project.

Exxon, with no evidence to support its argument, states that measures intended to mitigate the risks presented by the proposed project were ignored by the Board. Cross-Mot. & Opp'n at 24-25. These measures include a truck hazard mitigation plan intended to address an accidental oil spill that could generate risks to public safety by exposing the public to hazards from truck transport of crude oil. [38 AR 015015.] While Exxon summarizes mitigation measures 1- 6 (Cross-Mot. & Opp'n at 25-27), the SEIR states that only one of these (the truck hazard mitigation plan), if implemented, would reduce the likelihood of a truck accident. [38 AR 015032.] The others (Mitigation Measures RISK 2 through Risk 6), are relevant only to improving the response to an oil spill after it happens. [38 AR 015032.]

Exxon is well aware that to be eligible for modification of its Permit to allow non-pipeline transport, it had to mitigate the environmental impacts of the truck transportation mode to the maximum extent feasible. Board's Request to Take Judicial Notice, Ex. A at 9-6 (CZO 35-154.5(i)(2)) (Doc. No. 35-1.). Meeting that requirement did not require approval of the project.[2]

---

[2] Without support, Exxon states that the Board's "delay of the Project" moots the Modified Project condition requiring Exxon to truck oil only to SMPS. Cross-Mot. & Opp'n at 26 n.11. On the contrary, any delay arose when

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

12.
RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

Similarly, contrary to Exxon's argument, County policy does not "recognize that ExxonMobil must have market access." Cross-Mot. & Opp'n at 5. In connection with oil transportation, the County's Coastal Land Use Plan states that "[t]he County should assure that producers have access to competitive markets, **however, the County need not provide unlimited flexibility to all producers**." Exxon Request to Take Judicial Notice, Ex. A at 67. (Doc. No. 45-1.) The same County policy provides that once pipelines are constructed and operational to the refining center of a producer's choice, "pipelines shall be the required mode of transportation because they are less environmentally damaging than other modes of transportation." *Id.* at 66.

Exxon makes much of the fact that County Staff recommended that the Planning Commission approve Exxon's Modified Project. But County Staff are not decision makers, and neither the Planning Commission nor the Board were bound by Staff's assessment. *See Linborg-Dahl Investors, Inc. v. City of Garden Grove,* 179 Cal.App.3d 956, 959 n.1 (Cal. Ct. App. 1986); *Acad. of Our Lady of Peace v. City of San Diego,* 835 F.Supp.2d 895, 905-906 (S.D. Cal. 2011) (rejecting contention that substantial evidence in favor of project approval existed based on prior approvals of City Staff and Planning Commission).

As stated in the SEIR, while the Staff Report contains an analysis of a project's consistency with applicable local plans and policies, and that analysis serves as the basis for the County decision makers' deliberations, "[t]he final determination of consistency or inconsistency with adopted plans rests with County decision makers." [38 AR 015053.] The Planning Commission, after two public hearings, deliberated and recommended that the Board deny the Modified

---

Exxon's oil industry partner, Phillips 66, announced its plan to shut down the SMPS, which caused Exxon to drop its project from the Planning Commission's calendar and created the need for revision to the 2020 Proposed Final SEIR. [37 AR 014582-014583.]

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

13.

Project on grounds that it could not make necessary findings under County plans and policies. [37 AR 014562-014566; 60 AR 026388-026591; 60 AR 026323-026366.] As set forth in the County's Motion substantial evidence supports the Board's denial of the Modified Project because findings required pursuant to the LUDC and CZO could not be made. Mot. at 11-18.

### C. The Board Did Not Fail To "Bridge The Analytic Gap" Between The Evidence And The Board's Final Decision.

Exxon argues that the Board failed to "set forth findings to bridge the analytic gap between the raw evidence and ultimate decision" to deny Exxon's Modified Proposal (Cross-Mot. & Opp'n at 34; citing *Topanga Ass'n for a Scenic Cmty. v. County of Los Angeles,* 11 Cal.3d 506, 515 (1974)). But the Board's findings meet the requirement set forth in *Topanga Ass'n for a Scenic Cmty.*, and allow the Court to understand both the Board's consideration of the evidence before it, and the Board's analysis supporting its decision. *Topanga Ass'n for a Scenic Cmty.,* 11 Cal.3d at 516.

Evidence in the record provided details of tanker truck accidents in California from February 2000 to August 2021. [57 AR 025302 n.101; 57 AR 025303-025313; 58 AR 025593-025637]. Significantly, the Board relied on evidence in the record of four tanker truck accidents that could not have been considered in Section 4.5 of the SEIR (Transportation and Circulation) because the ATE traffic study relied on data from a time period prior to those accidents. [57 AR 025307-025311.]

There is clearly a contradiction between ATE's conclusion that the annual probability of an oil spill from a truck accident for all trucks going to Pentland Terminal would be 1 in 17 years with the actual data in the administrative record showing that four tanker truck accidents occurred on the route to Pentland Terminal during the period from May 20, 2018 to April 16, 2020. [37 AR 014585-014586; 57 AR 025309-025310; 58 AR 025630 (March 21, 2020

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

14.

RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

accident); 57 AR 025304-25305; 57 AR 025309; 58 AR 025615 (May 20, 2018 accident); 57 AR 025305; 57 AR 025309; 58 AR 025609; 58 AR 025619 (September 13, 2016 and December 12, 2018 accidents ); 57 AR 025308; 2 AR 000730-000731 (EDC Crash map).] In other words, four tanker truck accidents occurred on the planned truck route to Pentland Terminal over a two-year period. As pointed out in public comment, the actual data demonstrates the unreliability of the probabilities set forth in the ATE study. [57 AR 025312.]

Exxon makes scant reference to the evidence relied on by the Board, particularly the evidence of the March 21, 2020 tanker truck accident resulting in an oil spill into the Cuyama River. [1 AR 12; 38 AR 014974-014979.] Nor does Exxon mention the history of the four tanker truck accidents on Highway 166 between September 13, 2016 and March 21, 2020.

In anticipation of Exxon's reliance on Staff's draft findings for approval, the Board showed that its analysis of the required findings regarding streets & highways under LUDC section 35.82.080.E.1(c) and CZO section 35-174.7.1(c) was broader than what Staff referenced as support for the draft findings. Mot. at 14. Exxon disputes this (Cross-Mot. & Opp'n at 23) but it is supported by the draft findings. In both the draft findings and Table 6, [37 AR 01462; 37 AR 014597 (Table 6: "No improvements to roadways within LFC, along U.S. Highway 101, or State Route 166 are required for the Project, the existing roadways are adequate for the proposed development").]

Fundamentally, Exxon's position is that because the identified environmental impacts of the Modified Project would be mitigated to the maximum extent feasible, denial of the Modified Project was an abuse of discretion. But "the environmental review process is not the same as the permit approval process … An environmental review document is an informational document, not a decisionmaking document." *Guinnane*, 209 Cal.App.3d at 742. The Board relied on the SEIR and all other materials in the whole of the

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

15.

RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

administrative record to reach its decision. As discussed here and in the Motion, substantial evidence supports that Board's findings and those findings support the Board's decision.

### III. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S DETERMINATION THAT IT COULD NOT CONSIDER THE UNAVOIDABLE RISK OF AN OIL SPILL TO BE ACCEPTABLE, AND THEREFORE COULD NOT APPROVE THE MODIFIED PROJECT UNDER ANY CIRCUMSTANCES.

As set forth in the Board's Motion, substantial evidence supports the Board's finding that specific benefits of the Modified Project did not outweigh the significant environmental effect of a crude oil spill. Mot. at 18-22; Cal. Pub. Res. Code § 20181; Cal. Code Regs. tit 14, § 15093(b). In opposition, Exxon argues that the record contains ample evidence to support a statement of overriding considerations. Cross-Mot. & Opp'n at 27-32. But even if that were so, it does not mean that the Board abused its discretion in finding the opposite based on substantial evidence. *Cal. RSA No. 4 v. Madera County*, 332 F.Supp.2d 1291,1302 (E.D. Cal. 2003) ("[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.").

The Board's decision whether to approve Exxon's Modified Project despite its significant environmental impacts was a discretionary policy decision. *Cherry Valley Pass Acres & Neighbors v. City of Beaumont,* 190 Cal.App.4th 316, 357 (Cal. Ct. App. 2010).

Exxon argues that the Board "chose to dismiss relevant information about the advantages the Project would bring to the County." Cross-Mot. & Opp'n at 32. However, Exxon points to no evidence to support this argument and the record shows that the Board discussed the benefits that Exxon asserted the Modified Project would bring the County. [1 AR  10-11.]

///

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

16.
RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

1    Exxon does not dispute that evidence in the record established that the

2    Modified Project would produce less than one percent of the crude oil usage in

3    California. [60 AR 026522:8-17; 60 AR 026569:22-60 AR 026570:13; 60 AR

4    026356:2-19.] Instead, Exxon merely argues that the Board "should have

5    considered" how the Modified Project could support California's energy

6    independence. Cross-Mot. & Opp'n at 28. But the Board's assessment of the

7    small impact the Modified Project would have obviously involved balancing the

8    unavoidable impact of an oil spill from trucking against the benefit of

9    contributing 0.7 percent of the oil usage in California.

10    Exxon engages in selective quotation of the Board's findings regarding

11    the Modified Project's impact on the environment, which is misleading. Cross

12    Mot. & Opp'n at 29. A more complete review of the Board's position shows that

13    the Board found that the Modified Project would have "significant local and

14    regional environmental impacts" because it would be both "detrimental to the

15    environmental [*sic*] generally" and to locations along the truck route in the

16    County, which would "bear the brunt of environmental impacts, including

17    potential significant impacts from spills and other localized air impacts." [1 AR

18    7.]

19    Exxon argues that its Modified Project would return jobs and income to

20    the County during the seven-years or less period of interim trucking. Exxon jobs

21    and Exxon tax payments were interrupted by a pipeline rupture. There is no

22    evidence in the record that the SYU's subsequent shut-in status has caused the

23    County economic harm such that the County has had to close schools or reduce

24    law enforcement services or otherwise cut back on County services. Exxon

25    points to no evidence in the record that the County, in the interim between 2022

26    and 2029, has a dire need for the jobs or tax income to be generated by Exxon's

27    restart of the SYU. The Board denied an interim project. Exxon's expectation,

28    inherent in the interim nature of its Modified Project, is that it will restart the

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

17.
RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

SYU and be transporting oil by pipeline pursuant to its Permit sometime in the next seven years.

Exxon argues that the Board failed to consider the "benefit" of the Modified Project that concerns Exxon's contribution to the Coastal Resource Enhancement Fund ("CERF"). Cross-Mot. & Opp'n at 31. As stated in Permit condition X-8, CERF was established to "offset the impacts of increased industrial development associated with cumulative oil development" in the County. [67 AR 030877.] Exxon's Permit requires Exxon to make payments to CERF. It is difficult to understand how denying the Modified Project, and thereby eliminating the risk of a Class I impact, could be outweighed by allowing crude oil trucking in order to receive money for a fund designed to offset the very impacts caused by the oil trucking.

The Board recognized that the Modified Project is an interim project. The Board considered the short-term benefits of the Modified Project. Exxon has not, and cannot, show an abuse of discretion in the Board's determination that no overriding benefits of the Modified Project outweighed the unavoidable significant environmental impact of an oil spill.

## IV.    THE BOARD DID NOT FAIL TO PROCEED IN THE MANNER REQUIRED BY LAW.

Exxon's final argument to support its Cross-Motion is that the Board abused its discretion because it failed to proceed in the manner required by law. Cross-Mot. & Opp'n at 35-39. According to Exxon, the Board's failure was that in denying Exxon's Modified Project, the Board "rewrote *sub silentio* the County policy and law to eliminate the possibility of trucking crude oil." Cross-Mot. & Opp'n at 36:9-10.

Exxon's position is pure argument lacking any factual support. As Exxon recognized in its papers, most oil producers in the County transport oil by truck. Cross Mot. & Opp'n at 34:1-2. [1 AR 000152:12-18.] Exxon's argument is

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

18.
RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

flawed because Exxon treats the decision before the Board as a ministerial decision, rather than the discretionary decision it was. As part of this effort, Exxon relies on *Gabric v. City of Rancho Palos Verdes,* 73 Cal.App.3d 183 (Cal. Ct. App. 1977). Cross-Mot. & Opp'n at 37-38. The *Gabric* case has no application here, however, because in this case Exxon's application to modify its permit required environmental review and was subject to the Board's discretion. Exxon fails to show that the Board ignored any County laws or otherwise misapplied the law. *See Gabric,* 73 Cal.App.3d at 188-192.

Under the County's Coastal Zoning Ordinance, a permit for modifying crude oil processing or related facilities to allow transportation of crude oil by a mode other than pipeline is discretionary ("may be permitted"). Board's Request to Take Judicial Notice, Ex. A at 9-6 (CZO § 35-154.5(i)). A project subject to the discretionary decision whether to allow transportation by a mode other than pipeline must meet the requirements set forth in Section 35-154.5(i)(1)-(4) to even be considered. *Id.* Exxon asserts that because its Modified Project met the requirements for consideration, the Board could not have proceeded in the manner required by law when denying the Modified Project. Rather, according to Exxon, the three Board members who voted for denial "were improperly influenced by their policy motivations to push the oil industry out of Santa Barbara County." Cross-Mot. & Opp'n at 36:24-26.

To support its argument, Exxon misleads by quoting partial sentences spoken by Supervisors Hart, Williams, and Hartmann during deliberations on March 8, 2022. Cross-Mot. & Opp'n at 37:10-20. A review of the entirety of statements made by Supervisors Hart [1 AR 000166:15-000172:3; 1 AR 000178:9-19; 1 AR 000179:2-3], Williams [1 AR 000155:7 – 1 AR 000160:16; 1 AR 174:5-000175:14], and Hartmann [1 AR 000180:18 – 000182:24], which explain their respective decisions to deny Exxon's Modified Project, demonstrates that these decisions were based on evidence in the record and were

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

19.
RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

specifically focused on Exxon's request to modify its Permit. [1 AR 000178:13-19; 1 AR 000179:16-000180:3.] Just as in *Harrington v. City of Davis,* 16 Cal.App.5th 420 (Cal. Ct. App. 2017), where the appellant implied that "backroom dealings" had produced a city council's permit decision, Exxon fails to demonstrate, by reference to the record, that the Board bowed to political pressure in denying Exxon's application to modify its Permit, or otherwise abused its discretion. *Harrington,* 16 Cal.App.5th at 436. Exxon's challenge to the Board's decision on grounds that the Board failed to proceed in the manner required by law should be rejected.

## CONCLUSION

For all of the reasons set forth in its Motion for Partial Summary Judgment and above, Respondent/Defendant respectfully requests that this Court grant Respondent/Defendant's Motion for Partial Summary Judgment and deny Petitioner/Plaintiff's Cross-Motion for Summary Judgment as to Petitioner/Plaintiff's first cause of action.

Dated: May 1, 2023

RACHEL VAN MULLEM
COUNTY COUNSEL

By: /S/ - Mary Pat Barry
Mary Pat Barry
Senior Deputy County Counsel
Attorneys for Respondent and Defendant,
SANTA BARBARA COUNTY
BOARD OF SUPERVISORS

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

20.
RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION

## __CERTIFICATE OF COMPLIANCE__

The undersigned, counsel of record for Respondent and Defendant Santa Barbara County Board of Supervisors, certifies that this brief contains 6,430 words, which complies with the word limit of L.R. 11-6.1

Dated: May 1, 2023           RACHEL VAN MULLEM
                                    COUNTY COUNSEL

By: /S/ - Mary Pat Barry
      Mary Pat Barry
      Senior Deputy County Counsel
Attorneys for Respondent and Defendant,
SANTA BARBARA COUNTY
BOARD OF SUPERVISORS

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

21.
RESPONDENT'S REPLY IN SUPPORT OF MOT. & OPPOSITION TO CROSS- MOTION